(653 P.2d 472)
No. 53,751

STATE OF KANSAS, *Appellee,* v. WILLIAM MICHAEL LOVELAND, *Appellant.*

Opinion filed November 19, 1982.

*Andrew R. Heyl,* of Overland Park, for the appellant.

*Paul J. Morrison,* assistant district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by defendant William Michael Loveland from a jury verdict finding him guilty of the sale of Phencyclidine (PCP) in violation of K.S.A. 65-4107(*e*)(5) and 65-4127b(*b*)(1).

At approximately 10:00 p.m. on September 29, 1979, City-County Investigative Squad Detective Tom Amer met defendant William Loveland, Robert Mathis, and two other men outside a Shawnee, Kansas, recreation center. Defendant told the group that he was going to get a gram of PCP. Amer then entered the vehicle in which the four men were seated and they proceeded to an apartment in which another man resided. When the group arrived at the apartment, defendant was the only person who went inside.

Defendant returned from the apartment after approximately five to ten minutes, and the group then drove to the residence of another person. All five men entered this residence. Amer testified that they all went into the kitchen and sat around a kitchen table upon which defendant had placed a mirror and a scale. Defendant produced a cream-colored powder from his pocket and divided it into small lines on the mirror. Defendant then rolled up a $100 bill and passed the bill and mirror around the table for everyone to snort. After the mirror had been passed around, defendant asked Amer if he wanted to buy any. Amer told him

"Yeah, I'll buy a dime." Defendant then gathered up a small amount of the powder that had been placed on the mirror, wrapped it in tinfoil and gave it to Amer. Amer gave defendant a $20 bill and received two $5 bills in change.

Amer testified that he packaged and sealed the evidence and dropped it off in an evidence bin at the Johnson County laboratory about two hours after the sale took place.

At trial a small foil packet marked exhibit 1A was received into evidence. Amer testified that it was the packet he had received from defendant. Amer identified it as being the same by several notations that he had placed on the foil packet and the bag in which Amer had packaged it.

Later at trial a forensic chemist with the Johnson County Criminalistics Laboratory testified that he retrieved exhibit 1A from the evidence lockbox on October 1, 1979, and placed his identifying marks on the exhibit. The chemist further testified that he analyzed the contents of the foil packet and found it to contain Phencyclidine.

Robert Mathis was also called as a witness and testified on behalf of defendant. Mathis stated that Amer had snorted some of the powder on the mirror but did not purchase any powder from defendant. On cross-examination, Mathis admitted that he had been arrested and convicted of selling PCP and marijuana to Detective Amer and that he was a friend of defendant's. He further admitted that he had "done drugs" with defendant on previous occasions.

The jury found defendant guilty of the sale of PCP. He now appeals, raising the following issues: Whether the trial court erred (1) in overruling defendant's motion to dismiss at the end of the State's case-in-chief on the ground that the State failed to prove an essential element of the crime, to-wit: that the quantity of the drug was sufficient to cause a depressant effect on the central nervous system; (2) in overruling defendant's motion for a mistrial when the State elicited testimony from defendant's witness Robert Mathis that defendant had participated in prior criminal acts, unrelated to the present crime; (3) in overruling defendant's motion for a mistrial on the ground of prosecutorial misconduct during closing argument when the prosecutor referred to Phencyclidine as "angel dust"; (4) in allowing into evidence the substance claimed by the State to be purchased from

defendant because there was a break in the chain of custody, and the exhibit was different from the one testified about by witness Thomas Amer; (5) in not instructing on the lesser-included offense of possession of Phencyclidine; and (6) in giving instruction No. 10 rather than defendant's proposed instruction No. 4, or in the alternative PIK Crim. 67.15 (1979 Supp.).

Defendant was charged with and convicted of selling a controlled substance as set out in K.S.A. 65-4107(*e*) which states:

"Unless specifically excepted or unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances *having a depressant effect on the central nervous system* . . . .

"(5) Phencyclidine." (Emphasis supplied.)

Defendant contends that the trial court erred in overruling his motion to dismiss at the end of the State's case-in-chief on the ground that the State had failed to prove an essential element of the crime, namely, that the quantity of the drug was sufficient to cause a depressant effect on the central nervous system. Defendant maintains that a strict reading of K.S.A. 65-4107(*e*) leads to the above conclusion.

In *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 300-01, 398 P.2d 1011 (1965), the court held:

"It is a fundamental rule that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations. . . . The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. . . . Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. . . .

"The object of the rule is to establish a rule of certainty to which the individual may safely conform without fear of the statute being misinterpreted by a court or prosecutor. If we go beyond the fair meaning of the language used in the statute and attempt enlargement by implication or intention we have abandoned certainty. Courts are not at liberty to extend by intendment statutes creating and defining crimes. . . . Although the intention of the lawmakers is to be given effect, . . . the intention must be determinable from the words used in the statute to express intent. Aid cannot be sought from outside facts or circumstances, which would leave the results uncertain depending on the energy or the discretion of the investigator. Although the courts in determining the intention of the legislature may look to existing conditions, the causes which impelled the enactment and the object sought to be obtained, . . . such factors in considering a penal statute should be matters of common knowledge."

We find the statutory construction urged by defendant to be without merit. The terminology used in K.S.A. 65-4107(*e*) is

merely descriptive of the effect of the substances listed. The descriptive phrase "having a depressant effect on the central nervous system" is employed within the statute as a means to categorize the various controlled substances listed thereunder. Other such descriptive phrases used within the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.,* include "stimulant" and "hallucinogenic." The phrase in question does not establish, as defendant would suggest, a minimum requisite quantity necessary to cause a depressant effect on the central nervous system. The law in Kansas is well established that possession of any quantity of a controlled substance is sufficient to sustain a conviction. *State v. Berry,* 223 Kan. 102, 573 P.2d 584 (1977); *State v. Benson,* 207 Kan. 453, 485 P.2d 1266 (1971); *State v. Sabater,* 3 Kan. App. 2d 692, 601 P.2d 11, *rev. denied* 227 Kan. 928 (1979), *cert. denied* 446 U.S. 918 (1980). We likewise find that the proof of the sale of any amount of a controlled substance is sufficient to sustain a conviction.

Defendant next contends that the court erred in overruling defendant's motion for mistrial based on the following testimony elicited by the State from Robert Mathis during cross-examination:

"Q Is he a buddy of yours?
"A To a — then he was, yeah.
"Q Is he still a buddy of yours?
"A I don't see him as often, but he's still a friend, yeah.
"Q Have you done a lot of drugs with him before?
"A To a certain extent.
"Q What do you mean by that?
"A Not a lot—

"MR. HEYL: We object, Your Honor. May I approach the bench?
"THE COURT: Certainly.
"(Counsel approached the bench and the following proceedings were had out of the hearing of the jury:)
"MR. HEYL: Your Honor, the prosecutor has elicited testimony from this witness of prior crimes of the defendant. I am going to have to ask for a mistrial.
"THE COURT: Overruled. It has to do with the credibility of the witness.
"MR. HEYL: He said that he had done drugs with Mr. Loveland. I think that's evidence of another crime. It's highly prejudicial.
"THE COURT: Overruled."

Defendant contends that the testimony was used merely to show defendant's disposition to commit other crimes. K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The State maintains that the testimony was elicited to challenge the credibility of the witness. K.S.A. 60-421 provides, in part:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility."

In *State v. Crowley,* 220 Kan. 532, 536, 552 P.2d 971 (1976), the court stated:

"Drug offenses *per se* do not involve a dishonesty or false statement in their commission; hence K.S.A. 60-421 renders convictions for those offenses inadmissible for the purpose of impairing the credibility of a witness (*State v. Belote,* 213 Kan. 291, 516 P.2d 159)."

We find that the trial court did not err in permitting the testimony. The reference to defendant's drug-related activities with the witness was not elicited for the purpose of proving the witness's tendencies toward dishonesty, nor the defendant's predisposition to commit crimes. We find that the testimony was elicited to illustrate the witness's social relationship with defendant which would, in turn, indicate bias or prejudice. In *State v. Murrell,* 224 Kan. 689, Syl. ¶ 4, 585 P.2d 1017 (1978), the court held:

"Bias, interest or improper motives of a witness may always be shown in order to place his testimony in proper perspective."

Defendant next contends that the trial court erred in overruling his motion for a mistrial on the ground of prosecutorial misconduct. The alleged misconduct concerns the prosecutor's reference to "angel dust" in his closing argument. "Angel dust" is a commonly used slang term for Phencyclidine or PCP. Defendant contends that such a reference is improper because the term "angel dust" has been highly publicized as a dangerous drug, subject to great abuse.

A review of the record reveals that the prosecutor was not alone in referring to PCP as "angel dust." Detective Amer also used the

term as a synonym for the drug in question in the course of his testimony.

The declaration of a mistrial is entrusted to the sound discretion of the trial court. *State v. Everson,* 229 Kan. 540, 543, 626 P.2d 1189 (1981). We find that the prosecutor's reference to "angel dust" in his closing argument did not constitute prosecutorial misconduct, and further find that the trial court did not abuse its discretion in denying defendant's motion for mistrial.

Defendant next contends that the trial court erred in allowing into evidence the substance claimed by the State to have been purchased from defendant. Defendant maintains that there had been a break in the chain of custody and that the exhibit was different from the one testified about by the officer. The law governing this area was recently stated in *State v. Bright,* 229 Kan. 185, 188-89, 623 P.2d 917 (1981):

" 'The rule is that a party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was first taken into custody. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. . . . [This] test for chain of custody has been characterized as "reasonable certainty that no material alterations of the objects occurred."

" '. . . Any deficiency in the chain of custody should go to the weight rather than to the admissibility of the evidence.' "

In the present case, Detective Amer testified that State's exhibit 1A was the item purchased from defendant and that it was sealed and placed in a locked evidence bin at the Johnson County laboratory. The forensic chemist testified that he took the exhibit out of an evidence lockbox at the laboratory, determined it was PCP, and returned it to a lockbox. Detective Amer testified that he retrieved it from the laboratory and locked it in the property room evidence bin. It was removed by Detective Amer on only two occasions, for the preliminary hearing and for the trial. A review of the record reveals that the chain of custody for the suspect exhibit appears to be reasonably complete. We therefore find that the trial court did not err in admitting the evidence.

Defendant next contends that the trial court erred by not instructing the jury on the offense of possession of Phencyclidine as a lesser-included crime. It is well established in Kansas that possession is not a lesser-included offense of sale of a controlled

substance. See *State v. Greenlee,* 228 Kan. 712, 620 P.2d 1132 (1980); *State v. Collins,* 217 Kan. 418, 536 P.2d 1382 (1975); and *State v. Woods,* 214 Kan. 739, 522 P.2d 967 (1974). We therefore find that the trial court did not err in failing to give an instruction on simple possession.

Defendant's final contention is that the trial court erred in giving instruction No. 10 rather than defendant's proposed instruction No. 4, or in the alternative, PIK Crim. 67.15 (1979 Supp.).

Defendant's proposed instruction No. 4 is as follows:

"The defendant is charged with the crime of violation of the Uniform Controlled Substances Act as it pertains to a narcotic drug known as Phencyclidine. The defendant pleads not guilty.

"To establish this charge, each of the following things must be proved:

"1. That defendant sold a drug known as Phencyclidine *having a depressant effect on the central nervous system.*

"2. That he did so willfully, knowingly and intentionally; and that·[*sic*]

"3. That he did so on or about the 29th day of September, 1979, in Johnson County, Kansas." (Emphasis supplied.)

The trial court, instead, used PIK Crim. 67.13 (1979 Supp.) as its tenth instruction. It reads as follows:

"The defendant is charged with the crime of violation of the Uniform Controlled Substances Act of the State of Kansas as it pertains to a *narcotic drug* known as phencyclidine. The defendant pleads not guilty.

"To establish the charge, each of the following claims must be proved.

"1. That the defendant sold a narcotic drug known as phencyclidine;

"2. That the defendant did so willingly; and

"3. That the defendant did so on or about the 29th day of September, 1979, in Johnson County, Kansas." (Emphasis supplied.)

Defendant objected to the above instruction and requested as an alternative PIK Crim. 67.15 (1979 Supp.) which reads the same as PIK Crim. 67.13 except in place of "narcotic drug" it states "depressant drug." Defendant's argument is interconnected with his position as advocated in the first issue concerning proof of a depressant effect as an element of the crime.

In charging the jury, the court has the duty to define the offense charged and each essential element of the crime. *State v. Miller,* 222 Kan. 405, 565 P.2d 228 (1977); *State v. Finley,* 208 Kan. 49, 490 P.2d 630 (1971). As was stated above, the quantity or quality of the controlled substance sold is not a material element of the crime charged. Upon a review of the instruction given by the trial

court, when considered with all the instructions, we find that the instruction given was proper.

The judgment of the trial court is affirmed.