284

(64 P.3d 972)
No. 87,049

STATE OF KANSAS, *Appellee,* v. ANTHONY D. WARD, *Appellant.*

Opinion filed February 28, 2003.

*Rick Kittel*, assistant appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Anthony D. Ward appeals his convictions of one count of aggravated indecent liberties with a child, one count of indecent solicitation of a child, and two counts of lewd and lascivious behavior. On appeal, Ward argues that he was denied a fair trial because the State presented evidence of other crimes or bad acts he allegedly committed. Ward additionally argues that the trial court abused its discretion by allowing the State to question his wife regarding whether she was afraid of him and whether he had ever beaten her or pointed a gun at her in front of their children. We reverse and remand for a new trial.

During the summer of 1999, Ward worked as a janitor at the Georgetown Athletic Club (the Club) in Merriam, Kansas. Occasionally, H, a 15-year-old female, helped Ward clean at the Club for 10 dollars per night. Sometimes, H's younger sister, L, would go with Ward and H to the Club. They would be at the Club after closing, from approximately 11 p.m. until 4:30 a.m. After they finished cleaning, Ward let the girls work out on weights, play basketball, and get into the hot tub.

One night in August 1999, Ward and L telephoned L's friend, A, to help them clean the Club and A agreed. At around 11 p.m., Ward picked up A, a 16-year-old female, and they drove to Sharon's Hotel. There, Ward sold marijuana to another man. Ward asked A to hand him a blue ball which contained marijuana. As they were leaving the hotel, Ward attempted to kiss A, but she would not let him.

Ward and A then picked up L, and the three of them went to the Club, which was closed. While they were at the Club, two men stopped by and talked to Ward. At trial, the State insinuated that the two men and Ward engaged in a drug transaction.

After they finished cleaning, A and L got into the hot tub. Ward eventually joined the girls in the hot tub, wearing his boxer shorts. A saw Ward place a gun at the end of the hot tub and then cover it with a newspaper. In the hot tub, Ward rubbed A's leg, placed his hand inside her swimming suit, and penetrated her vagina with his finger. A told Ward to stop. While using his finger to penetrate A, Ward kept looking at A and nodding towards the gun. To A, this meant that if she did not let him penetrate her, he would use the gun. L witnessed Ward penetrate A with his finger. After digitally penetrating A, Ward stood up and displayed his erect penis. A and L testified that they saw Ward's penis.

Eventually, the girls left the Club with Ward. As they were leaving, a man in a newspaper van pulled in and started talking to Ward about drugs. After Ward finished his transaction with the other man, he drove the girls home.

As a result of this incident, Ward was charged with one count of aggravated indecent liberties with a child and two counts of lewd and lascivious behavior. Ward was also charged with one count of indecent solicitation of a child as a result of an incident with H. Ward was convicted of one count of aggravated indecent liberties with a child, two counts of lewd and lascivious behavior, and one count of indecent solicitation of a child.

*Res Gestae Evidence*

Ward's first argument on appeal is that the trial court abused its discretion in allowing the State to present evidence of other crimes or bad acts he allegedly committed. Specifically, Ward alleges that the trial court erred in allowing evidence of alleged drug transactions which occurred immediately before he and the complaining witnesses arrived at the Club, while they were at the Club, and immediately after they left the Club.

Before trial, Ward filed a motion in limine to prevent the admission of evidence related to his alleged drug-related activities. The trial court denied the motion after finding that the evidence of Ward's drug-related activities was admissible as res gestae evidence. At trial, Ward objected to testimony regarding the drug transactions. Accordingly, the issue was preserved for appellate re-

view. See *State v. Saenz*, 271 Kan. 339, 349, 22 P.3d 151 (2001) ("When a motion in limine or a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal.").

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

Res gestae evidence is that evidence which does not constitute a part of the crime charged but has a natural, necessary, or logical connection with the crime. *State v. Peck*, 237 Kan. 756, Syl. ¶ 2, 703 P.2d 781 (1985). In *State v. Clark*, 261 Kan. 460, 470-71, 931 P.2d 664 (1997), the court noted the following regarding res gestae evidence:

"Res gestae includes those circumstances which are automatic and undesigned incidents of the particular litigated act, which may be separated from the act by lapse of time but are illustrative of such act. It is the whole of the transaction under investigation or being litigated and every part of it. Acts done or declarations made before, during, or after the principal occurrence may be admissible as part of the res gestae to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. [Citation omitted.]"

In addition,

"[e]vidence of prior acts of a similar nature between a defendant and a victim is admissible [as res gestae] if the evidence is not offered for the purpose of proving distinct offenses but, rather, to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged. [Citations omitted.]" *State v. Jones*, 247 Kan. 537, 547, 802 P.2d 533 (1990).

An example of admissible res gestae evidence is found in *State v. Redford*, 242 Kan. 658, 750 P.2d 1013 (1988), where evidence of the defendant's drug dealing and his belief that the victim had

stolen from him was admitted as part of the res gestae because it was logically connected to the crimes of aggravated kidnapping and sexual assault. Another example of res gestae evidence is found in *State v. Kee*, 238 Kan. 342, 347, 711 P.2d 746 (1985), where the defendant, some 30 to 60 days prior to the theft of a 100-barrel oil tank, had removed the oil from the tank. Although Kee had not been charged with the theft of the oil, the removal of the oil facilitated the subsequent theft of the tank and was part of the res gestae. 238 Kan. at 347.

On appeal, Ward argues that res gestae is obsolete and notes that there is movement in Kansas to reject the concept. The Kansas Supreme Court, however, has not abolished res gestae, and this court is duty bound to follow Kansas Supreme Court precedent. See *Mueller v. State*, 28 Kan. App. 2d 760, 763, 24 P.3d 149 (2001), *cert. denied* 122 S. Ct. 1561 (2002). Because the Kansas Supreme Court has not indicated that it is departing from its position on the concept of res gestae, we are required to consider whether the trial court abused its discretion in admitting evidence of the drug-related activities under res gestae.

We find that evidence of the drug transactions do not constitute res gestae. Although the drug offenses are temporally connected with the sexual assaults, they are not logically related to one or more of the material facts in issue. Stated another way, the evidence of the alleged drug transactions is not naturally, necessarily, or logically connected with the sex offenses. The drug activity does not constitute an automatic and undesigned incident of the sex offenses and is not illustrative of the sex offenses. Moreover, the drug evidence is distinguishable from the res gestae evidence admitted in *Redford* because the evidence does not help to explain why the sexual assaults occurred. The drug evidence is also distinguishable from the res gestae evidence admitted in *Kee* because the drug transactions did not facilitate the sexual assaults. As a result, we find that the trial court abused its discretion in admitting evidence of the alleged drug transactions as res gestae and that the erroneous admission of the evidence affected Ward's right to a fair trial.

We additionally find that the probative value of the drug evidence was outweighed by the risk of prejudice to Ward. Although under K.S.A. 60-407(f) "all relevant evidence is admissible," a trial judge has the discretion to exclude otherwise relevant evidence when its probative value is substantially outweighed by the risk of prejudice to defendant. See *State v. Davis*, 213 Kan. 54, Syl. ¶ 2, 515 P.2d 802 (1973); see also *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 613, 549 P.2d 1354 (1976) (a trial judge has the discretion to exclude relevant evidence if he finds its probative value is substantially outweighed by its prejudicial nature).

By introducing evidence of the alleged drug transactions, the State planted the following, unfairly prejudicial seed in the minds of the jurors: If Ward is a drug dealer, he is a criminal and must be guilty of the crimes alleged in this case. The evidence of the drug transactions must have been very damaging to Ward's image in the minds of the jurors. Moreover, the probative value of the evidence was very slight. As noted previously, the evidence of the drug transactions did nothing to help explain why or how the sexual assaults occurred. As such, the drug transactions were not connected with the crimes charged. As a result, we find that the trial court abused its discretion in failing to exclude the drug evidence because of its relatively slight probative value and because its probative value was substantially outweighed by the risk of prejudice to Ward.

Ward also argues that the trial court abused its discretion in admitting, over his objection, evidence that he touched L's breasts on two prior occasions. Ward argues that evidence of the alleged prior incidents with L are inadmissible under *State v. Lavery*, 19 Kan. App. 2d 673, 877 P.2d 443, *rev. denied* 253 Kan. 862 (1993). There, the defendant was charged with aggravated criminal sodomy of a 9-year-girl. At trial, the trial court allowed evidence of a prior incident of sexual misconduct between the defendant and the complaining witness. The *Lavery* court found that the trial court erred in admitting the prior incident because that evidence was not sufficient to establish a relationship between the defendant and the complaining witness or to prove a continuing course of conduct between them. 19 Kan. App. 2d at 684.

The State argues that *Lavery* is distinguishable from the instant case because *Lavery* involved only one prior incident and in this case there was more than one incident. Instead, the State contends that this case is analogous to *State v. Bliss*, 28 Kan. App. 2d 591, 18 P.3d 979 (2001). In *Bliss*, the State brought an interlocutory appeal challenging the trial court's ruling that numerous instances of sexual misconduct between the defendant and the complaining witness would be inadmissible at trial. The *Bliss* court noted as follows:

"In cases of crimes involving illicit sexual relations between an adult and a child, evidence of other similar acts with the same child is admissible, whether such other acts occurred before or after the act charged, to establish the relationship between the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness. The threshold requirement that the other acts must be similar in nature should not be narrowly construed." 28 Kan. App. 2d 591, Syl. ¶ 3.

The *Bliss* court found that evidence of the defendant's sexual misconduct with the complaining witness was admissible independent of K.S.A. 60-455 because the evidence tended to establish the defendant's continuing wrongful sexual relationship with the complaining witness and corroborated the witness' testimony as to the acts charged. 28 Kan. App. 2d at 597; see also *State v. Moore*, 242 Kan. 1, 9, 748 P.2d 833 (1987) (allowing evidence independent of K.S.A. 60-455 that the defendant and the complaining witness engaged in sexual relations extending over several years); *State v. Crossman*, 229 Kan. 384, 387-88, 624 P.2d 461 (1981) (same).

We find that the trial court erred in admitting evidence that Ward touched L's breasts on two prior occasions independent of K.S.A. 60-455. Because the prior acts were limited to two instances, we find that the evidence was insufficient to establish a course of conduct between Ward and L. This is not to say that evidence of the prior acts could not have been introduced pursuant to K.S.A. 60-455. See *Crossman*, 229 Kan. at 387. As a result, we find that the trial court abused its discretion by admitting evidence that Ward touched L's breasts.

*Cross-examination*

Finally, Ward argues that the trial court abused its discretion when it allowed the State, over his objection, to cross-examine his

wife regarding whether she was afraid of him and whether he had ever beaten her or threatened her with a gun in front of their children.

Sheila Ward, the defendant's wife, was called as a defense witness at trial. During her cross-examination, Sheila denied observing Ward engaged in improper sexual conduct with L. The State then asked Sheila whether she was afraid of Ward. Ward objected on the grounds of relevancy. Over defense counsel's objection, the trial court allowed the State to ask Sheila whether she was afraid of him, whether he had beaten her, and whether he had pointed a gun at her head in front of their children. The trial court determined that the State's line of questioning was relevant to show Sheila's bias. Sheila, however, testified that she was not afraid of Ward and denied the allegations of physical violence.

"The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his [or her] testimony.' " *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Stated another way, "[b]ias, interest or improper motives of a witness may always be shown in order to place his testimony in proper perspective." *State v. Murrell*, 224 Kan. 689, Syl. ¶ 4, 585 P.2d 1017 (1978).

Most of the Kansas cases on this subject address the ability of a criminal defendant to cross-examine a prosecution witness on the matter of bias. See, *e.g., State v. Jacques*, 270 Kan. 173, 14 P.3d 409 (2000); *State v. Davis*, 256 Kan. 1, 883 P.2d 735 (1994); *State v. Magdaleno*, 28 Kan. App. 2d 429, 17 P.3d 974 (2001). However, in *State v. Loveland*, 8 Kan. App. 2d 196, 653 P.2d 472 (1982), *rev. denied* 232 Kan. 876 (1983), the court considered whether the trial court erred in allowing the State to cross-examine a defense witness as to whether he and the defendant did drugs together. Loveland, who was convicted of a drug offense, argued on appeal that the testimony was used merely to show his disposition to commit other crimes. The *Loveland* court disagreed, finding that "[t]he reference to defendant's drug-related activities with the witness was not elicited for the purpose of proving the witness's tendencies toward dishonesty, nor the defendant's predisposition to commit crimes." 8 Kan. App. 2d at 200. Instead, the *Loveland* court found that the

evidence was elicited to illustrate the witness' social relationship with the defendant, which in turn indicated bias or prejudice. 8 Kan. App. 2d at 200.

Here, the trial court allowed the State to question Sheila regarding Ward's alleged acts of physical abuse to show Sheila's bias. Evidence of abuse could have impeached Sheila's testimony that she did not observe Ward engaged in improper conduct with L, if the jury believed that she gave untruthful testimony out of fear. As a result, we find that the trial court did not abuse its discretion by allowing the State to cross-examine Sheila as to whether she was afraid of Ward and as to whether he was physically abusive towards her. However, once Sheila denied being afraid of Ward, it may have been better practice had the trial court exercised its discretion in limiting the credibility evidence. See *In re Adoption of Irons*, 235 Kan. 540, 546-47, 684 P.2d 332 (1984) (no abuse of discretion to limit cross-examination of attorney to the fact, not amount, of a fee she received in arranging an adoption); *State v. Davis*, 237 Kan. 155, 158, 697 P.2d 1321 (1985) (no abuse of discretion to limit cross-examination of State's witness for bias to witness' deal with the State without further details).

Although we find that the trial court did not abuse its discretion in allowing the State to cross-examine Sheila, we are troubled by the State's failure to complete the impeachment. Once Sheila denied the specific instances of physical abuse, the State should have offered extrinsic evidence to illustrate that Sheila's denial of the specific instances of abuse was suspect. See Barbara, Kansas Rules of Evidence with Evidence Objections and Evidentiary Foundations § 3.1 (4th ed. 1997).

Reversed and remanded for a new trial.