(75 P.3d 750)

No. 88,546

STATE OF KANSAS, *Appellee,* v. JOSIAH R. BUNYARD, *Appellant.*

Opinion filed August 29, 2003.

*Daniel E. Monnat,* of Monnat & Spurrier, Chartered, of Wichita, and *Paige A. Nichols,* of Lawrence, for appellant.

*Boyd K. Isherwood,* assistant district attorney, *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., PIERRON and JOHNSON, JJ.

MARQUARDT, J.: Josiah R. Bunyard appeals his conviction for one count of rape. We affirm.

In February 2001, Bunyard was charged with the rape of E.N. and two other women. At trial, E.N. testified that in August 2000, 17-year-old E.N. was at the home of Megan and Kristen Bloom where she met 21-year-old Bunyard. E.N. and Bunyard talked and

flirted a bit. E.N. testified that Bunyard playfully tried to remove her bathing suit top, but after repeated attempts, she asked him to stop because she became uncomfortable. In spite of that incident, E.N. and the Blooms invited Bunyard and his friends to return the next evening for a party.

E.N. testified that she consumed "a few wine coolers" at the party the next evening. E.N. testified that Bunyard asked her to accompany him to his car to watch a movie. She agreed. A mutual friend went with them. E.N. and Bunyard sat in the back seat. E.N. allowed Bunyard to put his arm around her. After their friend got out of the car, Bunyard removed E.N.'s clothing and began to kiss her. E.N. kissed Bunyard while he removed her clothing and touched her breasts. E.N. testified that she was "okay" with the kissing but she was not okay with him removing her clothing or touching her breasts. Bunyard removed his pants, put on a condom, and laid E.N. down on the car seat. E.N. said that she did not want to have intercourse with Bunyard, but she did not say anything to him about it.

E.N. testified that Bunyard "forced himself" on her and put his penis inside her vagina. At that point, E.N. testified that she told Bunyard, "I don't want to do this. Please don't make me do this." E.N. estimated that she told Bunyard to stop "[a] few seconds" after he inserted his penis into her vagina. Bunyard did not stop, and told E.N., "Just a little bit longer." E.N. again told Bunyard that she did not want to have intercourse with him but he did not stop. E.N. testified that she attempted to sit up and roll over onto her stomach but she was unable to. E.N. testified that she could move, but Bunyard did not stop the intercourse. E.N. started to cry and told Bunyard, "I don't want to get hurt. Please don't do this to me."

E.N. testified that the intercourse lasted for 5 to 10 minutes before Bunyard finally stopped. Bunyard suggested that she perform oral sex on him. E.N. did not agree. Bunyard and E.N. got dressed and exited the vehicle.

E.N. testified that she was crying, and told Megan and Kristen Bloom what happened. E.N. did not want to call the police because she was afraid her parents would find out that she had been drink-

ing. E.N. eventually told her parents and she reported the incident to the police.

E.N. went to the hospital 4 days after the incident. Several abrasions were found in her genital area. The nurse who examined E.N. testified that the abrasions were consistent with blunt force trauma which would be sustained in a mounting position. However, the nurse testified that such injuries could also occur during consensual sexual intercourse.

Bunyard testified that on the first night they met, E.N. persisted in asking to go for a ride in his car. He denied trying to remove E.N.'s bathing suit top. Instead, he testified that E.N. repeatedly tried to remove his hat. Bunyard described E.N.'s actions as "wrestling" with him.

Bunyard testified that on the evening of the party, E.N. again asked to go for a ride in his car. Bunyard, E.N., and two of Bunyard's friends got into the car and went for a ride. Bunyard testified that E.N. "reached up and started kissing me and grabbing on my chest." Bunyard testified that at that point, he stopped the car and got in the back seat with E.N. He and E.N. began kissing 15-20 minutes into the movie. He claimed that E.N. asked the other men to get out of the car.

Bunyard admitted that he removed his and E.N.'s shirt. He testified that E.N. removed her own pants. Bunyard testified that E.N. never told him to stop, and that she never said she did not want to have intercourse. According to Bunyard, E.N. was on top of him during the intercourse. Bunyard testified that E.N. asked him if he was interested in having a relationship and if he would call her the following day. Bunyard responded in the negative and E.N. discontinued the intercourse because she was upset. Bunyard testified that his entire encounter with E.N. was consensual.

A jury convicted Bunyard of the rape involving E.N. and acquitted him on the other rape charges involving the two other women. Bunyard was sentenced to 221 months' incarceration. Bunyard timely appeals his conviction and sentence.

## Sufficiency of Evidence

Bunyard claims that under the unique circumstances of this case, no rational factfinder could have found him guilty beyond a reasonable doubt of raping E.N.

When the sufficiency of the evidence is attacked, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Zabrinas*, 271 Kan. 422, 441-42, 24 P.3d 77 (2001).

Bunyard argues that E.N. was a willing participant until after penetration occurred. Bunyard contends that rape occurs at the time of initial penetration, or not at all. Bunyard also contends that there can be no rape even if a party later withdraws consent.

K.S.A. 2002 Supp. 21-3502 defines rape as:

"(1) Sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:

"(A) When the victim is overcome by force or fear."

K.S.A. 21-3501(1) defines "sexual intercourse" as:

"[A]ny penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

The issue of whether consent may be withdrawn after penetration is one of first impression in this state; therefore, case law from other jurisdictions is instructive.

In *Battle v. State*, 287 Md. 675, 683-84, 414 A.2d 1266 (1980), the Court of Appeals of Maryland held that consent must precede penetration. In other words, if a woman consented to a sexual encounter, even to intercourse, and consent is withdrawn prior to penetration, she did not consent to sexual intercourse. However, if she consents prior to penetration and withdraws the consent following penetration, there is no rape.

In reviewing case law from jurisdictions other than Maryland, we conclude that the *Battle* holding has not been adopted by other courts. In fact, the Appellate Court of Connecticut specifically rejected an argument identical to Bunyard's.

In *State v. Siering*, 35 Conn. App. 173, 644 A.2d 958 (1994), the defendant argued that if there is consent at the moment of penetration, the subsequent withdrawal of consent and continuation of intercourse accompanied by force cannot convert consensual intercourse into rape. In making this argument, the defendant noted that Connecticut law defines "sexual intercourse" as penetration, however slight. 35 Conn. App. at 180-81. The Connecticut court stated that the defendant's interpretation of the statute would produce bizarre results. 35 Conn. App. at 182. The court concluded that a victim may withdraw consent after penetration has occurred. 35 Conn. App. at 184-85.

In *State v. Robinson*, 496 A.2d 1067, 1070 (Me. 1985), the Supreme Judicial Court of Maine found that ongoing intercourse, initially consented to by the victim, becomes rape when and if the victim submits to the sexual assault because of physical force or fear.

We note that Bunyard cites *People v. Vela*, 172 Cal. App. 3d 237, 218 Cal. Rptr. 161 (1985), where the victim consented to intercourse at the time of penetration but later withdrew her consent. According to *Vela*, the presence or absence of consent at the moment of initial penetration appears to be the crucial point in the crime of rape. However, the California Supreme Court, in the case of *In re John Z.*, 29 Cal. 4th 756, 124 Cal. Rptr. 783, 60 P.3d 183 (2003), found the reasoning used in *Vela* to be "unsound" and "clearly flawed." The *John Z.* court held that "the offense of forcible rape occurs when, during apparently consensual intercourse, the victim expresses an objection and attempts to stop the act and the defendant forcibly continues despite the objection." 29 Cal. 4th at 760.

Nowhere in the definition of K.S.A. 2002 Supp. 21-3502 does it state that the act of sexual intercourse *ends* with penetration. Instead, the definition of "sexual intercourse" found at K.S.A. 21-3501 merely establishes a minimum amount of contact necessary to prove the offense.

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. When a statute is plain and

unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001).

We believe that the definition of rape espoused by Bunyard leads to a tortuous interpretation of K.S.A. 2002 Supp. 21-3502.

Quite simply, sexual intercourse performed when one participant is under force or fear is rape. It does not matter if the force or fear exists at the initiation of the act or whether it comes after consent is withdrawn. The act is rape under either circumstance. A participant in sexual intercourse may withdraw consent after penetration has occurred. The continuation of sexual intercourse after consent has been withdrawn, and in the presence of force or fear, is rape.

Bunyard next argues that even if rape can occur after consensual penetration, a defendant must have a reasonable time in which to act on the victim's withdrawal of consent. Bunyard contends that the State failed to prove that he did not cease sexual intercourse within a reasonable time after E.N. withdrew her consent.

The "reasonable time" argument was addressed by the California Supreme Court in *John Z.* The court noted that the defendant was given "ample time" to withdraw, and that his failure to cease intercourse was not reasonable. 29 Cal. 4th at 763. In *John Z.*, the victim told the defendant three times that she "needed to go home." It was estimated that the intercourse continued for 4 to 5 minutes after the victim first told the defendant she needed to go home. 29 Cal. 4th at 763.

In the instant case, E.N. estimated that it took Bunyard approximately 5 to 10 minutes to stop the intercourse. When consent is withdrawn, continuing sexual intercourse for 5 to 10 minutes is not reasonable and constitutes rape. We are not persuaded by Bunyard's arguments to the contrary.

Finally, Bunyard contends that the State failed to prove that E.N.'s participation in the intercourse was because of force or fear. The *Robinson* court noted that in any rape case, the State must prove beyond a reasonable doubt much more than mere absence

of consent. The critical element is the force or fear. 496 A.2d at 1070.

Kansas case law makes it clear that violent assaults and life-threatening actions are not necessary to sustain a rape conviction. *State v. Borthwick*, 255 Kan. 899, 911, 880 P.2d 1261 (1994). In order to determine whether a rational factfinder could have found beyond a reasonable doubt that a victim of rape has been overcome by force or fear, we consider the record as a whole. Each case must be decided on its unique facts in arriving at this determination. *Borthwick*, 255 Kan. at 911.

E.N. testified that she verbally and physically attempted to end the intercourse. Issues of credibility are within the province of the jury. On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are to be resolved in favor of the State. *State v. Lyons*, 266 Kan. 591, 602, 973 P.2d 794 (1999). E.N.'s testimony provided sufficient evidence of force to sustain Bunyard's conviction for rape. Under the specific facts of this case, we find that there was sufficient evidence to find Bunyard guilty of rape.

### Trial Court's Response to Jury Inquiries

After the jury retired for deliberations, the presiding juror sent two notes to the trial court. The first read: "Can we get the transcripts of [E.N.]'s testimony on *when* she asked for the sexual activity to cease and how many times. (i.e. the time frame)." The second note read: "If someone allows penetration, but then says no and he does not stop, does that fit the legal definition of rape? Please elaborate on the law, if there is any [to] elaborate."

The trial court had E.N.'s testimony read back to the jury. The trial court answered the second question by writing: "The definition of rape is contained in instructions numbered 6, 7, 8 & 9. I cannot elaborate any further. Please reread the instructions." Instruction Nos. 6 and 8 are identical to Instruction No. 7, except the victims' initials are different. Instruction Nos. 7 and 9 state:

Instruction No. 7: "In Count Two (2) the defendant, Josiah R. Bunyard, is charged with the crime of rape. The defendant pleads not guilty.

To establish this charge, each of the following claims must be proved:

1. That the defendant, Josiah R. Bunyard, had sexual intercourse with E.N.;
2. That the act of sexual intercourse was committed without the consent of E.N. under circumstances when she was overcome by force or fear; and
3. That this act occurred on or about August 25, 2000, in Sedgwick County, Kansas."

Instruction No. 9: "As used in these instructions, sexual intercourse means any penetration of the sex organ by the male sex organ. Any penetration, however slight, is sufficient to constitute sexual intercourse."

On appeal, Bunyard argues that the trial court violated its duty to guide the jury. Bunyard contends that the Kansas pattern instructions (PIK) on rape did not adequately address the question posed by the jury regarding these specific facts.

After the jury submitted its questions, the trial court conferred with the prosecutor and Bunyard's counsel. Bunyard's counsel suggested that the trial court should instruct the jury that the withdrawal of consent during intercourse could not lead to a rape conviction. The trial court refused to add it to the instruction because it would have taken the decision away from the jury. After some discussion, Bunyard's counsel agreed that referring the jury to the previously given instructions was "appropriate." The State maintains that Bunyard's concession amounts to invited error. A litigant may not lead a trial court into error and then complain of the trial court's action on appeal. *State v. Saleem*, 267 Kan. 100, 109, 977 P.2d 921 (1999).

A trial court is vested with a great amount of discretion in answering questions from a jury after the jury has begun its deliberations. Proper jury instruction is essential in a criminal proceeding where the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried. *State v. Bandt*, 219 Kan. 816, 824, 549 P.2d 936 (1976).

The jury instruction for rape given by the trial court in this case is identical to PIK Crim. 3d 57.01. The use of PIK instructions is not mandatory, but is strongly recommended. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and rec-

ommendations should be followed. *Hibbert v. Ransdell*, 29 Kan. App. 2d 328, 331-32, 26 P.3d 721, *rev. denied* 272 Kan. 1418 (2001).

We are not sure what response Bunyard expected on the instruction issue inasmuch as he argued in his appellate brief that the issue of withdrawn consent is one of first impression in Kansas. We do not see how the trial court could have crafted an answer that would have satisfied the parties, while at the same time accurately reflect the law. Therefore, we conclude that the trial court answered the jury's question appropriately.

Bunyard continues his argument by claiming that the instructions rendered the rape statute vague as to the facts of this case. However, Bunyard concedes that the rape statute is not unconstitutionally vague on its face. He claims that absent judicial construction clarifying the issue of withdrawn consent, the rape statute subjected him to criminal liability via a standard so indefinite that the jurors were free to formulate their own definitions of the offense.

We have thoroughly reviewed the entire record on appeal, including all of Bunyard's posttrial motions and the argument surrounding the readback of E.N.'s testimony to the jury. We cannot find one instance where Bunyard brought this constitutional issue to the trial court's attention. Constitutional grounds for reversal that are asserted for the first time on appeal are not properly before the appellate court for review. *State v. Conley*, 270 Kan. 18, 30, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001). This issue has not been properly preserved for appeal, and we will not address the merits of Bunyard's argument.

### Motion to Sever Charges

Prior to trial, Bunyard filed a motion to sever the charges in the complaint. Bunyard argued that the three charges of rape were not based on the same act and, further, they were not of the same or similar character. The trial court denied Bunyard's motion to sever, finding that all three rape charges were of the same or similar character.

On appeal, Bunyard maintains that the charges were not of the same or similar character. Whether a defendant will be tried on all

separate charges in a single trial is a matter within the discretion of the trial court, and its decision will not be disturbed on appeal unless there is a clear showing of abuse of discretion. If reasonable people could differ about the propriety of the trial court's decision, this court will not find that the trial court abused its discretion. *State v. Cromwell*, 253 Kan. 495, 511, 856 P.2d 1299 (1993).

Joinder is proper if the crimes charged: (1) are of the same or similar character; (2) are based on the same act or transaction; or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. K.S.A. 22-3202(1); *State v. Breazeale*, 238 Kan. 714, 729, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986). When the offenses are only of the same general character, there should be separate informations and separate trials. *State v. Barksdale*, 266 Kan. 498, 507-08, 973 P.2d 165 (1999).

In *Barksdale*, the Kansas Supreme Court held that joinder was proper when: the motive in both crimes was the same; both victims were strangled and received blunt trauma to the head; both victims were found face down and tied with cords; and both murders were committed in the same general neighborhood. 266 Kan. at 508-09.

In the instant case, the first victim, A.P., testified that she awoke to find herself naked from the waist down with her shirt and bra pushed above her breasts with Bunyard on top of her. A.P. testified that she attempted to push him away but Bunyard was "forcing" her to continue. E.N. testified that Bunyard removed her clothing while they were in the car. She testified that Bunyard "forced" her to have intercourse, despite her protestations. The third victim, L.B., testified that Bunyard forced her onto the bed, even though she repeatedly said "no" and "get off of me." L.B. testified that Bunyard pulled down her pants and underwear. According to L.B., Bunyard had intercourse with her even though she protested and cried. Bunyard's defense was that he had consensual sex with all three women.

In all three charges, Bunyard was known to the victims, allegedly forced himself onto each victim despite their protests, and allegedly removed at least part of each victim's clothing. In two of the three cases, Bunyard wore a condom.

After reviewing other cases, we are confident that the trial court did not abuse its discretion by consolidating these charges for trial. The charges were of a similar nature. Bunyard argues that all three charges would not have been independently admissible to prove plan under K.S.A. 60-455. However, when crimes are joined, evidence is admissible independent of K.S.A. 60-455. See *Barksdale*, 266 Kan. at 510. Furthermore, we do not believe that admissibility under K.S.A. 60-455 is a necessary element of joinder.

The jury was instructed that each crime is a separate and distinct offense, and each charge must be decided independent of the others. Bunyard maintains that we cannot assume lack of prejudice by the fact that he was acquitted of two of the charges. However, we find the acquittals to be compelling evidence of the jury's ability to differentiate the applicability of evidence. Bunyard argues that joining the charges led the jury to believe that he had a propensity for acquaintance rape. We believe there is no basis for this statement.

On appeal, Bunyard argues that a severance was necessary to protect his Fifth Amendment right not to testify to certain counts. Bunyard told the trial court that he only wanted to testify as to one of the rape counts but was forced to testify about all three.

The accused's election to testify on some but not all of the charges at trial does not automatically require a severance. Such a rule, in fact, would divest the trial court of all control over the matter of severance and entrust it to the defendant. *State v. Howell*, 223 Kan. 282, 284-85, 573 P.2d 1003 (1977). The trial court is entrusted with the decision concerning the severance of charges. Bunyard could have chosen not to testify.

We conclude that the trial court did not abuse its discretion by denying Bunyard's motion to sever charges.

### *Prosecutorial Misconduct*

Bunyard complains that two of the prosecutor's comments denied him his constitutional right to a fair trial.

Bunyard did not object to the first statement. If the claimed error has been determined to implicate a defendant's right to a fair trial, our standard of review is the same whether or not an objection

was made at trial. If the claimed error rises to the level of a denial of the Fourteenth Amendment right to due process, the issue will be addressed. *State v. Scott*, 271 Kan. 103, 113, 21 P.3d 516, *cert. denied* 534 U.S. 1047 (2001).

A two-step process is used to analyze allegations of prosecutorial misconduct. First, we decide whether the comments were outside the wide latitude a prosecutor is allowed in discussing the evidence. Second, we must decide whether the statements were so gross and flagrant as to prejudice the jury against the accused and deny the defendant a fair trial, requiring reversal. *Scott*, 271 Kan. at 113. Factors to consider under the second step are whether the comments show ill will by the prosecutor, and whether the evidence against the defendant was so overwhelming that the prosecutor's misconduct had little or no likelihood of having changed the result of the trial. *Scott*, 271 Kan. at 115.

During her closing argument, the prosecutor made the following comments:

"The law tells you he committed a rape. This is the time when you put the facts to the law, and I'm going to tell you a little bit about what's not in here, what the law does not require the State to prove."

"It shows you exactly what is required to prove, but there are certain things that are not required. A victim is not required to fight back. A victim is not required to become more of a victim, to be beat or have the opportunity to be hurt any more than the rape, than the actual force of the penis going inside of the vagina. That's enough."

"The force just has to be him on top of her, sticking his penis in her. That's enough. Do you believe that happened to those women beyond a reasonable doubt?"

On appeal, Bunyard claims that the prosecutor effectively told the jury that all acts of penetration without consent are forceful and constitute rape, even in the absence of force or fear. Bunyard believes that the State's "penetration equals force" theory was legally deficient.

We will note from the outset that the prosecutor's first comment mentioned by Bunyard, which ends, "what the law does not require the State to prove," is harmless. The prosecutor never mentioned the law or the specific facts of this case.

The State's other two comments were likely taken from the *Borthwick* case, cited above. In *Borthwick,* the Kansas Supreme Court held that violent assaults and life-threatening actions are not necessary to sustain a rape conviction. The legislature required only that a victim be overcome by force or fear; he or she need not endure a beating or be threatened with a deadly weapon to satisfy that requirement. 255 Kan. at 910-11.

Based on *Borthwick,* the prosecutor gave an accurate statement of the law when she told the jury that "[a] victim is not required to fight back. A victim is not required to become more of a victim, to be beat or have the opportunity to be hurt any more than the rape . . . ." Those statements were all accurate comments on the state of the law, given the *Borthwick* holding. We are left to examine the statement, "The force of his penis in her vagina is enough under the law of the State of Kansas."

The prosecution is given wide latitude in language and in manner of presentation of closing argument as long as it is consistent with the evidence adduced. *State v. Cravatt,* 267 Kan. 314, 331, 979 P.2d 679 (1999). However, even keeping in mind that deferential standard of review, we must conclude that the prosecutor's remark was an incorrect statement of the law in Kansas. K.S.A. 2002 Supp. 21-3502(a)(1)(A) clearly contemplates that in addition to sexual intercourse (the penetration portion of the equation), the victim must be overcome by force or fear. It is inaccurate to say that the crime of rape is completed with penetration. Therefore, we agree with Bunyard that the prosecutor misstated the law.

A misstatement of the law, whether by a prosecutor or by the court, denies the defendant a fair trial where the facts are such that the jury could have been confused or misled by the misstatement. *State v. Henry,* 273 Kan. 608, 619, 44 P.3d 466 (2002). In *Henry,* the prosecutor told the jury that it had to find the defendant did not commit the alleged acts to find him not guilty by reason of mental disease or defect. 273 Kan. at 619. The Kansas Supreme Court ruled that a misstatement of the law had to be considered in the context of the jury instructions given by the court. On review, the Supreme Court in *Henry* also examined other issues of alleged prosecutorial misconduct. 273 Kan. at 620-23. Although the case

was ultimately reversed, there is no indication that the case was reversed solely because of the prosecutor's erroneous misstatement of the law.

In *State v. Doyle*, 272 Kan. 1157, 38 P.3d 650 (2002), the Kansas Supreme Court considered a prosecutor's definition of the term "premeditation." The prosecutor told the jury, "Something can be premeditated as soon as it happens." 272 Kan. at 1163. During deliberation, the jury asked, "Is there a specific amount of time before a crime is committed that 'premeditation' is applied?" and the trial court answered, "No." 272 Kan. at 1163.

The Kansas Supreme Court concluded that the prosecutor misstated the law. However, the court found that there was no indication the State purposefully tried to mislead the jury. In addition, the court noted that there was ample evidence of premeditation. The court concluded that any error by the State regarding premeditation was harmless. 272 Kan. at 1166; see *State v. Albright*, 273 Kan. 811, 46 P.3d 1167 (2002).

When analyzing whether a prosecutor's misstatement of law was prejudicial to the defendant, we examine three things: (1) the jury instructions; (2) the balance of the prosecutor's remarks during closing argument; and (3) the evidence.

The jury was told that in order to find Bunyard guilty, it must find that "the act of sexual intercourse was committed without the consent of E.N. under circumstances when she was overcome by force or fear." The jury instruction on rape was an accurate statement of the law.

During her closing argument, the prosecutor told the jury that Bunyard crossed a line "when he had the force of his body and the force of his penis in [E.N. and] he committed a rape." The prosecutor directed the jury to look at the physical evidence, including the mounting injuries sustained by E.N. The prosecutor also asked, "Do you believe that he forced himself on them? That's what you have to decide."

We pay special attention to the prosecutor's remark made during the second half of her closing argument. She addressed the jury by saying, "The only issue is sex without consent with force or fear. Do you believe that happened beyond a reasonable doubt?" Bun-

yard's own attorney made a similar comment during his closing argument.

After thoroughly reviewing all of the relevant evidence, we conclude that the prosecutor's misstatement of the law was harmless. Errors that do not affirmatively cause prejudice to the substantial rights of the complaining party do not require reversal when substantial justice has been done. *State v. Clark*, 263 Kan. 370, 376, 949 P.2d 1099 (1997).

Bunyard also complains about another comment made by the prosecutor during closing argument. As she was concluding her remarks the prosecutor said, "The most significant thing, these three young ladies did not know each other. Their circles did not cross. Their paths did not cross." Bunyard objected, and the objection was overruled. The prosecutor finished by saying, "All of these young men did know each other. Consider that." The prosecutor was referring to the fact that Bunyard's friends all presented very similar testimony.

On appeal, Bunyard claims that the prosecutor's comment violated the trial court's instruction that all three charges must be considered separately. Bunyard believes that the comment was prejudicial and undermined his right to a fair trial.

At trial, most of the witnesses for Bunyard testified that they had known Bunyard for quite a few years. Thus, the prosecutor was simply summarizing the evidence when she made her remark to the jury. We do not believe that the prosecutor was attempting to link all three rape charges together. Instead, the prosecutor was attempting to show that the defense witnesses were all biased in favor of Bunyard, and could be motivated to fabricate their stories. This court has previously ruled that it is appropriate to illustrate a witness' social relationship with the defendant to indicate bias or prejudice. Bias, interest, or improper motives of a witness may always be shown in order to place the witness' testimony in proper perspective. *State v. Loveland*, 8 Kan. App. 2d 196, 200, 653 P.2d 472 (1982), *rev. denied* 232 Kan. 876 (1983).

We do not view the remark as prosecutorial misconduct. In the absence of misconduct, there can be no prejudice. Bunyard's argument regarding prosecutorial misconduct is without merit.

## Cumulative Error

Barnyard claims that cumulative trial errors require that we reverse his conviction and remand this case for a new trial.

We have thoroughly reviewed all of the issues raised by Bunyard. We concluded that the prosecutor did err in making closing arguments; however, we found that any error was harmless. There was no other error.

## Juvenile Adjudications in Criminal History Score

Bunyard argues that the trial court erred when it included juvenile adjudications in his criminal history score. Bunyard believes that using juvenile adjudications as part of criminal history violates the holdings of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001).

In *State v. Hitt*, 273 Kan. 224, Syl. ¶ 2, 42 P.3d 732 (2002), *cert. denied* 123 S. Ct. 962 (2003), the Kansas Supreme Court held that juvenile adjudications need not be charged in an indictment or proved to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the Kansas Sentencing Guidelines. This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication that the court is departing from its previous position. *Mueller v. State*, 28 Kan. App. 2d 760, 763, 24 P.3d 149, *rev. denied* 271 Kan. 1037 (2001), *cert. denied* 535 U.S. 997 (2002). We also note that the United States Supreme Court impliedly approved the *Hitt* decision when it denied the writ of certiorari.

Bunyard's argument concerning his criminal history score is without merit.

Affirmed.

JOHNSON, J., dissenting: I would find that forcing Bunyard to defend against the three unrelated charges in a consolidated trial deprived him of a legal advantage and denied him a fair trial.

I agree with the majority's assertion that "[w]hen the offenses are only of the same general character, there should be separate informations and separate trials." I disagree with the majority's

finding that E.N.'s case was sufficiently similar to the other two cases to warrant joinder. The charges involving A.P. and L.B. alleged the victims were unwilling participants from the beginning. Those victims described nonconsensual clothing removal and forcible, unwanted penetration.

On the other hand, E.N. was "okay" with kissing Bunyard and continued that kissing while her clothing was being removed. Although she testified that the removal of her pants made her uncomfortable, she acknowledged that she did not give any indication that it was unacceptable behavior. Only after Bunyard had put on a condom, laid E.N. back onto the car seat, and placed his penis inside her vagina did E.N. state, "I don't want to do this. Please don't make me do this."

As indicated in the majority's analysis of the sufficiency of the evidence issue, E.N.'s case presents an issue of first impression in this state, *i.e.*, whether the withdrawal of consent during coitus transforms the act into the crime of rape. That scenario is dissimilar to the traditional forcible rapes alleged in the other two cases. By consolidating the two types of rape cases, " 'there would inevitably be some jumbling of the two cases at the trial, which would tend to prevent that concentrated consideration of each case which is indispensable in matters of such gravity.' " *State v. Barksdale*, 266 Kan. 498, 508, 973 P.2d 165 (1999) (quoting *State v. Thompson*, 139 Kan. 59, 62, 29 P.2d 1101 [1934]). The theory of Bunyard's culpability in the E.N. incident was unique. The joinder of the two charges alleging forcible penetration "jumbled" Bunyard's legal advantage of arguing that E.N. consented to the commencement of sexual intercourse.

The majority accepts the State's argument that Bunyard's desire to testify in only one of the cases is not controlling because it would allow the defendant to dictate severance, rather than leaving the decision to the trial court's discretion, and because Bunyard had the option of not testifying at all. The "tail should not wag the dog" rationale is less than compelling. The test enunciated by the majority includes a determination of whether joinder will deprive the defendant of some legal advantage. Because of differing factual patterns in the three cases, Bunyard had a credible reason for want-

ing to exercise his *constitutional* right to remain silent in only two of the cases. In other cases, the trial court will have the opportunity to assess whether joinder will legitimately compromise the defendant's Fifth Amendment rights. The State's forcing Bunyard into an all or nothing situation was unnecessary to preserve the authority of future trial courts to determine whether joinder is appropriate. Just as Bunyard had the option of not testifying in all three cases, the State had the option of trying the three unrelated cases separately.

Missing from the State's argument is a persuasive reason for consolidating the three cases. The State's brief does allege that "several witnesses would have had to repeatedly testify to the numerous times had separate trial [*sic*] been granted." However, of the State's 15 witnesses, only one provided testimony on more than one charge and that was a police chemist who testified about the results from the rape kits. The only way that the State's witnesses would have testified in more than one trial is if the State could establish admissibility of the prior bad acts. However, the State, citing *Barksdale,* asserts that joinder is not dependent on the consolidated crimes meeting the admissibility test of K.S.A. 60-455. Apparently, the State may argue that the other crimes would be admissible in separate trials, but the defendant is not permitted to argue that joinder permits otherwise inadmissible evidence to be introduced.

Most conspicuous is the absence of an explanation as to why the State delayed prosecuting the rapes. A.P. reported her rape in December 1999; E.N. reported her rape in August 2000; L.B. reported her rape in January 2001. Bunyard was charged with all three crimes in February 2001. In contrast, *Barksdale,* relied upon by the State and the majority, presented a situation in which the State learned of both murders at the same time. It is inconceivable that even the busiest prosecutor would leave a rapist on the street for a year in the interest of judicial economy. One can only surmise that by consolidating the accumulated rape reports in one prosecution, the State hoped to strengthen all three cases by inferring that Bunyard was disposed to commit date rape. Promoting the jury's use of character propensity reasoning would not be allowed

in a separate trial. See K.S.A. 60-455. It should not be permitted via the use of joinder.

I would reverse and remand for a new trial on the charges involving E.N., without evidence of the other two incidents. Upon retrial, the jury would be entitled to an explanation of when, if ever, a rape can occur following consensual commencement of sexual intercourse.

Although one might ponder whether a person's criminal culpability for refusing to prematurely terminate sexual intercourse should be equated with that of a person who forcibly penetrates an unwilling participant, that policy decision is not ours to make. The legislature has defined rape, as applied to E.N.'s case, as having three elements: (1) sexual intercourse; (2) without consent; and (3) when the victim is overcome by force or fear. K.S.A. 2002 Supp. 21-3502(a)(1)(A). The statute does not prescribe the order in which the elements must occur.

Ordinarily, the absence of consent and the presence of force or fear precede the penetration, making the rape complete upon the slightest penetration. However, penetration does not complete the sexual intercourse; rather, that term would apply to the continuing copulation until terminated by withdrawal. However, a participant is not required to complete the act of coitus; consent may be withdrawn. At that point, two of the rape elements are present, *i.e.* sexual intercourse and lack of consent. The rape only becomes complete when the culprit effects continuation of sexual intercourse by overcoming the victim by force or fear. The evidence presented in E.N.'s case would have supported a jury's finding of rape on the basis of forcible continuation of sexual intercourse after the withdrawal of consent.