IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 103,566

STATE OF KANSAS,
*Appellee*,

v.

IRA WAYNE FLYNN,
*Appellant.*

SYLLABUS BY THE COURT

1.

K.S.A. 21-3502(a)(1)(A) proscribes all nonconsensual sexual intercourse accomplished through force or fear, including nonconsensual sexual intercourse occurring when a person communicates his or her withdrawal of consent after penetration and the other person continues the intercourse through compulsion.

2.

When a defendant is charged with rape as defined in K.S.A. 21-3502(a)(1) for an offense committed before July 1, 2011, and the evidence presented at trial suggests the victim initially consented but withdrew consent after penetration, the trial court must instruct the jury as to the elements of rape and give an additional instruction. Namely, the court must instruct the jury that the defendant may be convicted of rape even though consent is given to the initial penetration, but only if the consent is withdrawn, the withdrawal of consent is communicated to the defendant, and the defendant continues the intercourse through compulsion.

1

3.

This court's holding in *State v. Bunyard*, 281 Kan. 392, 133 P.3d 14 (2006), that a defendant is entitled to a reasonable time in which to act after consent to sexual intercourse is withdrawn and communicated to the defendant is disapproved.

Review of the judgment of the Court of Appeals in 45 Kan. App. 2d 1113, 257 P.3d 1259 (2011). Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed July 11, 2014. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, case is remanded with directions.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kaitlin M. Dixon*, deputy county attorney, argued the cause, and *Evan C. Watson*, county attorney, was on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: We granted the State's petition for review of the Court of Appeals' decision in *State v. Flynn*, 45 Kan. App. 2d 1113, 257 P.3d 1259 (2011). There, the panel majority reversed Ira Flynn's rape conviction and remanded for a new trial after concluding the district court committed clear error in failing to instruct the jury pursuant to *State v. Bunyard*, 281 Kan. 392, 133 P.3d 14 (2006). *Flynn*, 45 Kan. App. 2d at 1118-19.

In *Bunyard*, this court held that K.S.A. 21-3502(a)(1) proscribes all nonconsensual sexual intercourse accomplished by force or fear. Thus, under this statute, a person may be convicted of rape if intercourse begins consensually but consent is withdrawn after penetration and the intercourse continues by force or fear. 281 Kan. at 412. *Bunyard*

2

further held that in cases involving post-penetration withdrawal of consent, the defendant is entitled to a "reasonable time" in which to act after consent is withdrawn and communicated to the defendant. 281 Kan. at 413-16.

Judge Malone dissented in *Flynn*, distinguishing *Bunyard* and concluding the district court did not clearly err in failing to give the instruction. Judge Malone also encouraged this court to reconsider *Bunyard*'s conclusion the defendant is entitled to a "reasonable time" in which to act after consent is withdrawn and communicated to the defendant. *Flynn*, 45 Kan. App. 2d at 1119-23 (Malone, J., dissenting).

Today, we disapprove *Bunyard*'s holding that a defendant is entitled to a reasonable time in which to act after consent is withdrawn and communicated to the defendant. But we reaffirm *Bunyard*'s conclusion that K.S.A. 21-3502(a)(1)(A) proscribes all nonconsensual sexual intercourse accomplished through force or fear, including nonconsensual sexual intercourse occurring when a person communicates his or her withdrawal of consent after penetration and the other person continues the intercourse through compulsion. Additionally, we reaffirm *Bunyard*'s conclusion that in cases concerning post-penetration withdrawal of consent, the district court must do more than instruct the jury on the statutory elements of rape as defined in K.S.A. 21-3502(a)(1).

Instead, when a defendant is charged with rape as defined in K.S.A. 21-3502(a)(1) for an offense committed before July 1, 2011, and the evidence presented at trial suggests the victim initially consented but withdrew consent after penetration, the trial court must instruct the jury as to the elements of rape and give an additional instruction. Namely, the court must instruct the jury that the defendant may be convicted of rape even though consent is given to the initial penetration, but only if the consent is withdrawn, the

3

withdrawal of consent is communicated to the defendant, and the defendant continues the intercourse through compulsion.

Here, although the facts of this case warranted the additional instruction on withdrawn consent, the district court failed to give it. Because we are not firmly convinced this omission was harmless, we affirm the Court of Appeals' decision, reverse Flynn's rape conviction, and remand for a new trial with an appropriate instruction.

FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2007, A.S. reported to friends, family, and police that Ira Flynn had raped her. The State ultimately prosecuted Flynn on six charges: one count each of kidnapping, aggravated kidnapping, and aggravated criminal sodomy and three counts of rape.

*Flynn's Jury Trial*

The evidence presented at trial established that Flynn and A.S. had known each other for several years and attended the same schools and that A.S. and her mother worked with Flynn's mother and sister. At trial, Flynn and A.S. testified consistently as to certain events that occurred the evening of September 25, 2007, and in the early morning hours of September 26, 2007. Namely, both Flynn and A.S. testified the two of them made plans to hang out at Jennie Townsend's house after A.S. got off work. A.S. picked up Flynn from Shawn Howell's house around 11:30 p.m., made a brief stop at her apartment, and then drove herself and Flynn to Townsend's house.

A.S. and Flynn also consistently testified they stayed at Townsend's for a few hours, drinking and playing games. Flynn had ingested OxyContin earlier in the day and at some point A.S. offered Flynn a ride home after he indicated he was not feeling well

4

and wanted to leave. As they prepared to leave, Flynn asked to drive and A.S. let him. A.S.'s and Flynn's testimony conflicted about events occurring after they left Townsend's house.

*A.S.'s Testimony*

A.S. testified Flynn took two wrong turns after leaving Townsend's house and, when A.S. pointed this out, Flynn responded, "'We're going out here to go fuck.'" A.S. objected, telling Flynn, "'No we're not. No we're not.'" A.S. immediately became afraid when Flynn took the first wrong turn. A.S. also testified Flynn had not previously behaved violently toward her or caused her any harm.

According to A.S., Flynn eventually stopped the car on a country road, yelled at her to get out, and forced her to remove her clothing. Flynn then forced her to engage in nonconsensual vaginal intercourse on the hood of the car, on the ground in front of the car, and again in the backseat of the car. During the sexual intercourse on the ground, A.S.'s "bottom part," vagina, legs, arms, back, elbows and knees came in contact with the gravel road. At some point, Flynn attempted anal intercourse and told A.S. if they did not have anal intercourse she would have to provide oral sex. Flynn later placed his penis in A.S.'s mouth without her permission and forced her to perform oral sex.

A.S. testified she was overcome by fear during each act of intercourse as well as when forced to perform oral sex. She twice tried to run from Flynn, but he caught her each time. After the second time, A.S. placed her hands over her face and told Flynn she would have to quit her job. According to A.S., at this point Flynn's "face just completely changed," and it appeared to her Flynn realized what he had done. Flynn then picked up A.S.'s clothing from around the car, A.S. got dressed, and Flynn helped her put on her shoes.

*Flynn's Testimony*

Flynn testified he and A.S. left Townsend's house, "[c]ruised" the main drag in town once or twice, and briefly stopped at a convenience store because he felt sick. Flynn was "pretty trashed," and he believed A.S. also was intoxicated. Flynn testified A.S. began fondling his genitals so he drove out to a country road.

According to Flynn, after he parked the car, he and A.S. got out, met in front of the car, and removed each other's clothing before having sexual intercourse on the hood of the car. A.S. then got down from the hood and performed oral sex on him. Flynn testified these acts were consensual, but the intercourse was "rough." Next, he and A.S. attempted to reengage in sexual intercourse on the hood of the car but, according to Flynn, they "went down to the ground" instead and had intercourse in front of A.S.'s car. Flynn testified A.S. was not fighting and he did not try to control her, but A.S. hit her head when they "flopped to the ground."

Flynn testified that during the intercourse on the ground, A.S. told him, "'No. Just stop. No. Not here on the ground.'" Flynn "slowed down" but did not immediately stop because he was not sure A.S. was serious. According to Flynn, the two continued having intercourse for "30 seconds, a minute, maybe two," but he stopped when A.S. again said, "'Stop, I'm serious.'" Flynn then helped A.S. gather her clothing and get dressed, and he dressed himself. Flynn denied having intercourse with A.S. in the backseat of her car and testified A.S. did not try to run from him at any point during the incident.

*After the Incident*

Flynn and A.S. both testified A.S. began crying as Flynn put on his shoes, and she continued crying as he drove back into town, but she would not respond when Flynn

6

asked what was wrong. Flynn parked A.S.'s car behind Shawn Howell's house and A.S. called her friends, Mark and Lisa Conrad, who lived nearby. A.S. then ran to the Conrads' back gate, leaving her keys and purse in the car with Flynn.

Flynn left A.S.'s keys in the car and went inside the Howell's home. There, he continued drinking alcohol, left three voicemail messages on A.S.'s cell phone, and called his mother and sister. Flynn told his sister A.S. was mad at him and "wigging out" and told his mother he had "'fucked up'" and was "'under the influence again.'" Flynn testified he had been having problems with his family because he had been drinking and using drugs and was "[m]essing up on probation."

Mark Conrad testified A.S. called him around 3 a.m. and asked him to meet her at his back fence. Mark opened the back gate, and A.S. pushed on the fence gate as she came in. A.S. was crying and she asked Mark to close and lock the gate. Mark asked if anything was wrong and A.S. replied, "'Yeah. I just need to come in the gate to wait for him to leave.'" Mark testified A.S. appeared very distraught and "seemed in fear of someone."

Lisa Conrad testified A.S. was crying and appeared nervous and "very, very, very upset." A.S. pulled at her clothes, looked over the fence, and said, "'There's someone still out there. Don't talk too loud. He may still be out there.'" Lisa noticed scrapes on A.S.'s knees and elbows. A.S. ultimately told Lisa that Flynn raped her in the country. Lisa called A.S.'s mother, who in turn called 911. A.S.'s mother testified she did not discuss the details of the incident with A.S. because A.S. was "really upset and nervous."

7

*The Investigation*

Captain Mike Yoder testified he spoke with A.S. at the Conrads' home. A.S.'s statements to Yoder about the incident were consistent with her trial testimony. After A.S. described the location of the incident to Yoder, he and another officer located an area on Worden Park Road that appeared to match A.S.'s description. Yoder testified the gravel road had "scuff marks, foot prints, just disturbances in the dirt that normally are not there on a country road." Yoder secured the area and took photographs while another officer took additional photos and videotaped the area.

Detective Frances Stevenson testified she also spoke with A.S. at the Conrads' home. Stevenson's conversation with A.S. was limited because A.S. was vomiting and reported having a migraine. Stevenson briefly interviewed A.S. at the sheriff's office later that afternoon, but A.S. again became ill and returned home to rest before going to the hospital for a sexual assault examination.

Kathy Gill-Hopple, a SANE/SART nurse, testified she discussed the assault with A.S. and performed a sexual assault examination. A.S. told Gill-Hopple that Flynn "drove her out to the country, pulled her out of the car on to a gravel road, and assaulted her." A.S. also reported that Flynn attempted anal sex and put his penis in her mouth. Gill-Hopple testified A.S. had "numerous areas of abrasions and some bruising." Gill-Hopple's photographs of these injuries were admitted at trial and depicted abrasions on A.S.'s knees, elbows, and lower backside.

Gill-Hopple characterized A.S.'s anal and genital injuries as "more than the average patient." With the aid of a line diagram generally depicting A.S.'s injuries and a series of slides actually depicting A.S.'s injuries, Gill-Hopple described the injuries to the jury. Gill-Hopple concluded A.S.'s genital injuries resulted from "blunt penetrating

8

trauma," which generally implies the use of force but also could be consistent with consensual intercourse.

Detective Stevenson testified she recorded the voicemail messages Flynn left on A.S.'s cell phone after the incident, and she played the messages for the jury. In the first message, Flynn told A.S. that her keys were in the car, that she should "call the cops or do what you want to do" and that he "fucked up." In the second message, Flynn told A.S. he had already called the cops and explained what happened, he had left the keys in her car, he could not say he was "sorry," and he would "do a couple years, or you know whatever." In the third message, Flynn's speech was noticeably more slurred, but he again told A.S. he had called the cops, said something unintelligible followed by "for what I did," and stated "I'm sorry [more unintelligible words] I apologize, goodbye."

At trial, Flynn explained that his reference in the message to "do[ing] a couple years" was based on his belief that he would serve jail time for his probation violation, not for raping A.S. Further, Flynn claimed he apologized to A.S. in the message because "[the intercourse] was a little rough," and he believed she was mad about the intercourse on the ground. According to Flynn, until a detective interviewed him, it had not occurred to him that A.S. would accuse him of rape.

Detective Jeff Hawkins testified he interviewed Flynn the afternoon of September 26, 2007. Flynn initially reported that he and A.S. had consensual intercourse twice on the hood of the car, A.S. told him she wanted to stop, he stopped, they got dressed, and A.S. started crying. After follow-up questions, Flynn told Hawkins that A.S. slid off the hood of the car at some point and "'had given him head.'" After more follow-up questions, Flynn told Hawkins that, at some point, he and A.S. "'slammed'" to the ground and also had intercourse on the ground. Referencing the intercourse on the ground, Flynn explained to Hawkins that "things had gotten a little wild," and "he kept going a little bit

9

after [A.S.] said no and that he was inside her for two—one to two minutes after she had said no." Flynn told Hawkins he did not attempt anal sex with A.S.

*Closing Arguments, Jury Deliberations, Verdicts, and Sentencing*

In closing arguments, the prosecutor and defense counsel both reminded the jury that it ultimately would decide whether the evidence was consistent with A.S.'s or Flynn's version of events. In arguing the evidence supported A.S.'s version, the prosecutor emphasized the extent of A.S.'s injuries, the Conrads' testimony about A.S.'s demeanor and conduct after the incident, and Flynn's incriminating, post-incident voicemail messages. In contrast, defense counsel concentrated on Flynn's explanations for his cell phone messages and reminded the jury that A.S.'s injuries could be consistent with consensual intercourse. Further, defense counsel emphasized Flynn's testimony about the intercourse on the ground, saying:

> "What happened was [Flynn] testified that [A.S.] said, 'Stop.' He wasn't sure if she was serious, so he slowed down, and then she said, 'No, seriously, stop,' and he withdrew. When he was asked to stop, when he found out she—she wanted him to stop, he stopped."

During deliberations, the jury asked to review the videotape of the crime scene, requested a read back of Detective Stevenson's and Kathy Gill-Hopple's testimony regarding their conversations with A.S., and inquired whether the jury instructions were numbered according to the sequence in which the events were alleged to have occurred.

Ultimately, the jury found Flynn guilty of the rape charge defined in Instruction No. 5 concerning the allegation Flynn raped A.S. on the ground in front of her car but acquitted Flynn of the five remaining charges.

The district court imposed an aggravated presumptive sentence of 186 months' imprisonment with a 36-month period of postrelease supervision and ordered the sentence to be served consecutive to Flynn's sentence in a prior case.

*Court of Appeals' Decision*

In reversing Flynn's conviction and sentence, the Court of Appeals majority addressed only one of Flynn's four appeal issues—*i.e.*, Flynn's claim the district court violated his Sixth Amendment right to a fair trial and to present his theory of defense when the court failed to instruct the jury in accordance with *State v. Bunyard*, 281 Kan. 392, "that sex can cease to become consensual if the consent is withdrawn after penetration and the intercourse continues either by force or fear, however, the defendant is allowed a 'reasonable time' in which to act upon the withdrawal of consent." See *Flynn*, 45 Kan. App. 2d at 1116-18.

Citing Flynn's testimony that he briefly continued the intercourse after A.S. withdrew consent, the majority concluded the district court clearly erred in failing to give a *Bunyard* instruction. Given the jury's verdicts acquitting Flynn on all but one of the six charges against him, the majority further concluded the instruction's omission required reversal of Flynn's rape conviction. The majority declined to address Flynn's remaining claims as moot and remanded the case for a new trial. *Flynn*, 45 Kan. App. 2d at 1115-19.

In his dissenting opinion, Judge Malone distinguished *Bunyard* on its facts and concluded the district court did not clearly err in failing to give the instruction. Judge Malone also urged this court to revisit *Bunyard*'s conclusion that a defendant is entitled to a "reasonable time" to withdraw after consent is withdrawn. Judge Malone agreed with Justice Luckert's statement in her dissenting opinion in *Bunyard* that "the court should not judicially add a defense allowing a reasonable time in which to commit rape," and noted

11

that such a defense was not found in the express language of the statute. *Flynn*, 45 Kan. App. 2d at 1119-23 (Malone, J., dissenting).

We granted the State's petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

DISCUSSION

In its petition for review, the State advocates a two-prong position essentially mirroring the points made in Judge Malone's dissent—*i.e.*, the facts of this case did not warrant a *Bunyard* instruction and this court should revisit and disapprove *Bunyard*'s holding that a defendant has a "reasonable time" to withdraw when consent is withdrawn. The State reasons *Bunyard*'s rule is unnecessary because the rape statute already requires nonconsensual intercourse to be accomplished by force or fear. In support, the State cites Judge Johnson's (now Justice Johnson) dissenting opinion in *State v. Bunyard*, 31 Kan. App. 2d 853, 75 P.3d 750 (2003), *rev'd* 281 Kan. 392 (2006), and Justice Luckert's dissenting opinion in *Bunyard*, 281 Kan. 392.

Our decision to accept the State's request that we revisit *Bunyard* requires that we undertake statutory interpretation as well as consider our prior caselaw. We apply a de novo standard of review to these tasks. *In re Care & Treatment of Miller*, 289 Kan. 218, 225, 210 P.3d 625 (2009).

*Court of Appeals decision in* Bunyard.

Before revisiting *Bunyard*, we find it helpful to thoroughly discuss the rationale for both the Court of Appeals' decision in *Bunyard*, 31 Kan. App. 2d 853, as well as this court's review of that decision in *Bunyard*, 281 Kan. 392.

12

Bunyard directly appealed his rape conviction to the Court of Appeals arguing, *inter alia*, that the evidence was insufficient to support his conviction, and the district court failed to properly respond to a jury question about the rape charge. 31 Kan. App. 2d at 857, 860, 862, 864.

The victim in *Bunyard*, E.N., testified she and Bunyard were watching a movie in the backseat of Bunyard's car, when he put his arm around her and they began kissing while Bunyard removed E.N.'s clothing. E.N. testified she was "'okay'" with kissing Bunyard, but she was not okay with his removal of her clothing or his touching her breasts. 31 Kan. App. 2d at 855. According to E.N., after Bunyard removed his pants, put on a condom, laid her down in the backseat, and achieved penetration, she told him to stop. But Bunyard did not stop, instead continuing the intercourse for 5 to 10 minutes. E.N. further testified she tried to move away from Bunyard after she told him to stop.

In contrast, Bunyard testified his entire encounter with E.N. was consensual and that in fact, E.N. was on top of him during intercourse. According to Bunyard, E.N. ended the intercourse by dismounting when he told her he did not plan to call her the next day and was not interested in a relationship.

In his direct appeal to the Court of Appeals, Bunyard challenged the sufficiency of the evidence, arguing the evidence showed he and E.N. had consensual intercourse until after penetration occurred, and "rape occurs at the time of penetration, or not at all." 31 Kan. App. 2d at 857. The *Bunyard* panel properly noted that it faced an issue of first impression in Kansas as to whether rape can occur when a victim withdraws consent post-penetration. See 31 Kan. App. 2d at 857-58 (citing *Battle v. State*, 287 Md. 675, 683-84, 414 A.2d 1266 [1980] and *People v. Vela*, 172 Cal. App. 3d 237, 218 Cal. Rptr. 161 [1985], *disapproved of by In re John Z.*, 29 Cal. 4th 756, 128 Cal. Rptr. 2d 783, 60 P.3d 183 [2003]). Ultimately, the panel adopted the view held by a majority of

13

jurisdictions—*i.e.*, when intercourse begins as consensual, it can become rape in some circumstances. See *Bunyard*, 31 Kan. App. 2d at 858-59 (briefly discussing *In re John Z.*, 29 Cal. 4th 756; *State v. Siering*, 35 Conn. App. 173, 644 A.2d 958, *cert. denied* 231 Conn. 914 [1994]; and *State v. Robinson*, 496 A.2d 1067 [Me. 1985]). Finding the reasoning from these cases persuasive, the *Bunyard* panel concisely concluded:

> "[S]exual intercourse performed when one participant is under force or fear is rape. It does not matter if the force or fear exists at the initiation of the act or whether it comes after consent is withdrawn. The act is rape under either circumstance. A participant in sexual intercourse may withdraw consent after penetration has occurred. The continuation of sexual intercourse after consent has been withdrawn, and in the presence of force or fear, is rape." *Bunyard*, 31 Kan. App. 2d at 859.

Had the panel ended with this straightforward analysis, we probably would not be revisiting this issue today. Instead, the panel chose to address Bunyard's alternative argument that "even if rape can occur after consensual penetration, a defendant must have a reasonable time in which to act on the victim's withdrawal of consent." 31 Kan. App. 2d at 859. Citing *In re John Z.*, 29 Cal. 4th 756, the *Bunyard* panel essentially adopted the "reasonable time" argument and applied it to the facts before it:

> "The [*John Z.*] court noted that the defendant was given 'ample time' to withdraw, and that his failure to cease intercourse was not reasonable. 29 Cal. 4th at 763. In *John Z.*, the victim told the defendant three times that she 'needed to go home.' It was estimated that the intercourse continued for 4 to 5 minutes after the victim first told the defendant she needed to go home. 29 Cal. 4th at 763.
>
> "In the instant case, E.N. estimated that it took Bunyard approximately 5 to 10 minutes to stop the intercourse. When consent is withdrawn, continuing sexual intercourse for 5 to 10 minutes is not reasonable and constitutes rape." *Bunyard*, 31 Kan. App. 2d at 859.

14

Unfortunately, the panel's reliance on *John Z.* was misplaced as the California Supreme Court in *John Z.* specifically rejected the argument that "the male should be permitted a 'reasonable amount of time' in which to withdraw." *In re John Z.*, 29 Cal. 4th at 762-63. Thus, the panel's consideration of Bunyard's alternative theory was both unnecessary and legally unsound.

In any event, the *Bunyard* panel ultimately concluded the evidence was sufficient to find Bunyard guilty of rape based on its determination that (1) rape can occur when consent is withdrawn post-penetration, (2) the victim withdrew her consent post-penetration, (3) Bunyard failed to withdraw from intercourse within a reasonable time after the victim withdrew her consent, and (4) Bunyard continued the intercourse by force or fear. 31 Kan. App. 2d at 857-60.

Judge Johnson, now Justice Johnson, dissented on a severance issue and would have reversed and remanded for a new trial on that ground. 31 Kan. App. 2d at 869-72 (Johnson, J., dissenting). But he agreed with the majority's conclusion that rape can occur if the victim withdraws consent after penetration because,

> "[a]t that point, two of the rape elements are present, *i.e.* sexual intercourse and the lack of consent. The rape only becomes complete when the culprit effects continuation of sexual intercourse by overcoming the victim by force or fear. The evidence presented in E.N.'s case would have supported a jury's finding of rape on the basis of forcible continuation of sexual intercourse after the withdrawal of consent." 31 Kan. App. 2d at 872 (Johnson, J., dissenting).

*This court's review of the panel's decision in* Bunyard.

After granting Bunyard's petition for review, this court in *Bunyard* reversed the Court of Appeals' decision, reversed Bunyard's rape convictions on grounds of

15

prosecutorial misconduct, and remanded the case for a new trial. *Bunyard*, 281 Kan. at 394, 396-408.

Based on its decision to reverse and remand for a new trial, the court addressed two additional issues: "(1) Was the evidence insufficient as a matter of law to support the conviction of rape, *i.e.*, does the Kansas rape statute cover post penetration conduct, and (2) if rape can occur after consensual penetration, must the defendant have a reasonable time in which to act?" 281 Kan. at 410.

Addressing the first question, the *Bunyard* court noted that two jurisdictions had rejected the concept of post-penetration rape. 281 Kan. at 411-12 (citing cases from Maryland and North Carolina). But the court agreed with the panel's conclusion that Kansas' rape statute proscribes all nonconsensual intercourse accomplished by force or fear, not just the initial penetration. Thus, the court succinctly reasoned "a person may be convicted of rape if consent is withdrawn after the initial penetration but intercourse is continued by the use of force or fear." 281 Kan. at 412-13.

In addressing the second question—whether a defendant is entitled to a reasonable time to withdraw from intercourse after the victim withdraws consent—the court pointed out that the panel relied on *In re John Z.*, 29 Cal. 4th 756, in finding Bunyard did not withdraw within a reasonable time. *Bunyard*, 281 Kan. at 413-14. The *Bunyard* court then briefly discussed *John Z.* and specifically noted the defendant in that case had argued "the male should be permitted a reasonable amount of time in which to withdraw once the female raises an objection to intercourse" because:

> """By essence of the act of sexual intercourse, a male's primal urge to reproduce
> is aroused. It is therefore unreasonable for a female and the law to expect a male to cease
> having sexual intercourse immediately upon her withdrawal of consent. It is only natural,

16

fair and just that the male be given a reasonable amount of time in which to quell his primal urge . . . ."'" *Bunyard*, 281 Kan. at 413 (quoting *In re John Z.*, 29 Cal. 4th at 762).

Notably, this court in *Bunyard* pointed out that in impliedly adopting the "reasonable time to withdraw argument," the *Bunyard* panel failed to consider *John Z.*'s "clear rejection" of the defendant's "reasonable time" argument. *Bunyard*, 281 Kan. at 414. But after pointing out the panel's misplaced reliance on *John Z.* and *John Z.*'s strong rejection of the defendant's "primal urge" rationale for his "reasonable time to withdraw" theory, this court in *Bunyard* inexplicably concluded:

> "In the case of consensual intercourse and withdrawn consent, we agree that the defendant should be entitled to a reasonable time in which to act after consent is withdrawn and communicated to the defendant. However, we conclude that the jury should determine whether the time between withdrawal of consent and the interruption of intercourse was reasonable. This determination must be based on the particular facts of each case, taking into account the manner in which consent was withdrawn. We believe this conclusion balances our rejection of the primal urge theory per se with our recognition of the unique facts and circumstances of each individual case.
> "While the facts of this case may establish that the defendant's continuation of intercourse by placing the victim in fear or by forcing the victim to continue for 5 to 10 minutes was well beyond a reasonable time, we reiterate that this is a jury determination and not for the trial court or the appellate courts to decide. We, thus, conclude that the trial court had a duty to instruct the jury that post-penetration rape can occur under Kansas law and that the defendant has a 'reasonable time' to respond to the withdrawal of consent." 281 Kan. at 414-15.

Justice Luckert concurred in the majority's holding that the rape statute encompasses post-penetration rape but dissented from the majority's conclusion that a defendant who is charged with rape "'is entitled to a reasonable time in which to act after

17

consent is withdrawn.'" 281 Kan. at 424 (Luckert, J., dissenting in part and concurring in part). Justice Luckert would have held

> "that a defendant has committed rape if, after consent is withdrawn, the act of intercourse continues as the result of force or fear. This holding is consistent with the elements defined by K.S.A. 2004 Supp. 21-3502(a)(1)(A). The court should not judicially add a defense allowing a reasonable time in which to commit rape." 281 Kan. at 424-25 (Luckert, J., dissenting in part and concurring in part).

Keeping this background in mind, we return to the instant case to consider the State's contention that we should disapprove *Bunyard*'s "reasonable time" holding.

*We disapprove* Bunyard*'s "reasonable time" holding because it is contrary to the plain language of the rape statute and without legal support*.

The State does not question *Bunyard*'s holding that "a person may be convicted of rape if consent is withdrawn after the initial penetration but intercourse is continued by the use of force or fear." 281 Kan. at 412. Instead, the State urges us to disapprove *Bunyard*'s conclusion that "the defendant should be entitled to a reasonable time in which to act after consent is withdrawn and communicated to the defendant." 281 Kan. at 414. We agree with the State that this portion of *Bunyard* must be disapproved.

Simply stated, *Bunyard*'s conclusion that a defendant should be entitled to a "reasonable time" to discontinue intercourse with a nonconsenting partner is contrary to the plain language of the rape statute, is inconsistent with *Bunyard*'s own interpretation of the rape statute as encompassing the crime of post-penetration rape, and is not supported by the authorities the *Bunyard* panel considered or relied upon to reach its conclusion. We therefore disapprove *Bunyard*'s holding on this point.

18

But as *Bunyard* recognized, Kansas' rape statute "proscribes *all* nonconsensual intercourse that is accomplished by force or fear, not just the initial penetration. Thus, a person may be convicted of rape if consent is withdrawn after the initial penetration but intercourse is continued by the use of force or fear." 281 Kan. at 412. That portion of our holding in *Bunyard* is consistent with the plain language of K.S.A. 21-3502(a)(1)(A), and we reaffirm it today.

Our modification of *Bunyard*'s holding means that when a party presents evidence demonstrating the victim initially consented to sexual intercourse but later withdrew consent, the critical issue for the jury is whether the defendant continued the intercourse through compulsion despite the victim's withdrawal of consent. It is the continuation of nonconsensual intercourse by compulsion that makes the offender's act rape, not the offender's failure to immediately respond to the victim's withdrawal of consent.

*We reaffirm* Bunyard*'s conclusion that the rape elements instruction does not adequately state the law in post-penetration rape cases arising from acts committed before July 1, 2011.*

Thus, despite our disapproval of *Bunyard*'s "reasonable time to withdraw" language and its definition of "reasonable time," we reaffirm its conclusion that when evidence is presented involving post-penetration withdrawal of consent, the trial court must do more than simply instruct the jury on the statutory elements of rape. Instead, in such cases, in addition to the rape elements instruction, the trial court must instruct the jury that rape may occur even though consent was given to the initial penetration, but only if the consent is withdrawn, that withdrawal is communicated to the defendant, and the sexual intercourse continues when the victim is overcome by force or fear. See *Bunyard*, 281 Kan. at 416.

19

We note, however, that because the legislature amended the rape statute in 2012, our decision requiring an additional jury instruction is limited to those cases in which the rape is alleged to have occurred before July 1, 2011. In amending the rape statute, the legislature provided that effective July 1, 2011: "[I]t shall not be a defense that the offender did not know or have a reason to know that the victim did not consent to the sexual intercourse, that the victim was overcome by force or fear, or that the victim was unconscious or physically powerless." K.S.A. 2013 Supp. 21-5503(e). Because Flynn was convicted of rape for an offense that occurred in 2007 and the controlling statute, K.S.A. 21-3502(a)(1)(A) (2007), did not contain the language now found in K.S.A. 2013 Supp. 21-5503(e), we leave for another day whether a modified *Bunyard* instruction would remain appropriate in cases arising under K.S.A. 2013 Supp. 21-5503(a)(1)(A) for offenses committed after July 1, 2011.

*Under the facts of this case, we are not firmly convinced the district court's failure to instruct the jury on the issue of withdrawn consent was harmless.*

Finally, we must apply this modified *Bunyard* analysis to the facts of this case. In doing so, we first note our disagreement with the panel's decision to review Flynn's alleged instruction error under the clear-error rule of K.S.A. 22-3414(3). See *Flynn*, 45 Kan. App. 2d at 1116-18. Instead, we conclude Flynn's counsel sufficiently requested the instruction when he suggested the potential need for a "withdrawal instruction." Accordingly, we will apply the analytical framework and standards of review appropriate when a trial court denies a defendant's request for a jury instruction.

Under that framework, our first task is to determine whether the failure to give the instruction was erroneous. That determination is subject to unlimited review and requires consideration of whether the instruction was legally and factually appropriate. If error is found, our remaining task is to consider, in light of the entire record, whether the error was harmless. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

As we have just concluded, a modified *Bunyard* instruction must be given when the jury has heard evidence from any source regarding a post-penetration withdrawal of consent. Thus, a modified *Bunyard* instruction is unique in that if it is factually appropriate, it is necessarily legally appropriate. And, like the panel majority, we conclude the instruction was factually appropriate in this case. See *Flynn*, 45 Kan. App. 2d at 1117-18.

Here, A.S. testified she never consented to intercourse with Flynn. But Flynn testified A.S. initially consented but withdrew her consent after penetration. Because the jury heard evidence of both consensual intercourse and withdrawn consent, we conclude a modified *Bunyard* instruction was factually, and consequently, legally appropriate. See *Bunyard*, 281 Kan. at 416 (noting rape elements instruction is incomplete statement of law in cases involving post-penetration withdrawal of consent).

Further, we find unpersuasive the State's citation to *State v. Robinson*, No. 99,443, 2009 WL 1140256 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1102 (2010). Although Robinson invoked *Bunyard* in challenging his rape conviction, *Bunyard* did not apply because the only question in *Robinson* was whether the *initial* penetration was consensual, not whether the victim withdrew her consent after penetration. *Robinson*, 2009 WL 1140256, at *1-6.

Having concluded the district court erred in failing to give a modified *Bunyard* instruction, our final task is to determine whether that error was harmless. Flynn argues the error violated his constitutional right to a fair jury trial and to present his theory of defense. Accordingly, we must reverse unless we "are persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, 565, 256

21

P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see also *State v. Backus*, 295 Kan. 1003, 1009, 287 P.3d 894 (2012) (applying "more stringent" constitutional standard in absence of argument from either party regarding appropriate harmless error standard).

In light of the conflicting evidence presented in this case; the severity and number of charges filed against Flynn based on the incident with A.S.; the jury's acquittal of Flynn on charges of aggravated kidnapping, kidnapping, two counts of rape, and one count of aggravated criminal sodomy; and the jury's verdict of guilt only on the rape count clearly involving the issue of withdrawn consent, we are not persuaded the error was harmless.

Accordingly, we affirm the Court of Appeals decision, reverse Flynn's rape conviction, and remand for a new trial with a supplemental instruction based on *Bunyard* as modified by this opinion.