NOT DESIGNATED FOR PUBLICATION

No. 120,506

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MELVIN LASHAWN TOLIVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed February 21, 2020. Affirmed.

*Brenda M. Jordan*, of Brenda Jordan Law Office LLC, of Manhattan, for appellant.

*Kendra Lewison*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM: Melvin Lashawn Toliver was convicted of stalking but was acquitted of sexual battery for events occurring in May 2018. In this appeal, Toliver claims numerous trial errors denied him a fair trial, and he seeks reversal of his conviction. After a careful review of the record, we conclude that Toliver's challenges do not warrant reversal, and we affirm his conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

From December 2017 until May 2018, K.M. lived on Fremont Street in Manhattan, Kansas. Starting in March 2018, Toliver began showing up at K.M.'s door. The first time, Toliver asked for someone named "Mario." The second and third time, Toliver asked for K.M.'s short-term roommate, Henry "Goldie" Jones. The first time Toliver asked for Jones, Jones was not at the residence, and K.M. told Toliver not to return. Nevertheless, Toliver continued to show up, once when Jones was at the Fremont residence and on several occasions after Jones moved out.

Most of the incidents fit a pattern. K.M. worked as a server at a local bar. After the bar closed at 2 a.m., K.M. would sometimes host people at her Fremont residence, and Toliver would appear during that time. If K.M.'s guests were still at her residence, K.M. would answer the door; if she was alone, however, she would not. K.M. moved to a new residence on North 11th Street in Manhattan in May 2018, but Toliver appeared there as well. K.M.'s threat to call the police did not dissuade Toliver from coming to K.M.'s residence. In total, K.M. estimated that Toliver came to her residence six or eight times.

On May 4, 2018, S.H., K.M.'s girlfriend, was leaving a Manhattan bar with her friends around closing time. While S.H. was waiting with her friends for their ride to arrive, Toliver approached her from behind. Toliver asked S.H. if she was "interested in females" and "liked girls" and asked S.H. to go home with him. S.H. turned away but soon felt Toliver press his crouch against her thigh. S.H. quickly left the area after her friends' ride arrived and, upon encountering police officers nearby, asked the officers to walk her to her car. S.H. mentioned the encounter to the officers but did not ask them to make a report concerning the incident.

Two days later, in the early hours of May 6, 2018, K.M. walked home to her 11th Street residence following her night shift at the bar. Shortly after arriving at home, K.M.'s

dog started barking at the bedroom window. When K.M. pulled back the curtains, she saw Toliver standing outside her apartment in the grass and looking at her through the window. Afraid, K.M. called S.H. and asked her to come over.

Ten minutes later, S.H. arrived at K.M.'s residence and recognized Toliver from the incident two nights earlier. As S.H. entered K.M.'s residence, Toliver yelled to S.H., "Hey! Hey, I know you've seen me. Hey, come talk to me. I know you can hear me." However, S.H. did not stop or talk to Toliver. Instead, S.H. entered K.M.'s residence, and together they called the police.

Toliver was charged with stalking K.M. and sexual battery for the incident involving S.H., both class A person misdemeanors. Toliver moved to have the charges severed, but the district court denied the motion. Following a jury trial, Toliver was found guilty of stalking but not guilty of sexual battery. Toliver was sentenced to an underlying sentence of 12 months, but, after spending 4 days in the Riley County Jail, he was placed on probation for 12 months.

Toliver timely appeals.

ANALYSIS

Toliver raises four issues on appeal. First, Toliver contends that the district court abused its discretion when it denied his motion to sever the stalking and sexual battery charges. Second, Toliver argues that the district court erred by admitting the statements made by K.M. and S.H. to police officers because they were not relevant and were unduly prejudicial. Third, Toliver argues that the State's decision not to have victims from Toliver's prior crimes testify was tantamount to suppression of exculpatory evidence. Fourth, Toliver contends that the cumulative effects of these errors resulted in an unfair trial. We address each claim in order.

3

I.     DID THE DISTRICT COURT ERR BY NOT SEVERING THE STALKING AND SEXUAL
       BATTERY CHARGES?

Toliver argues that the stalking and sexual battery charges were not of the same or similar character and were improperly joined for trial. He alleges the failure to sever was prejudicial and resulted in jury confusion. The State argues the district court correctly denied severance of the charges.

The appellate court reviews potential joinder errors using a three-step analysis, applying a different standard of review at each step:

> "'First, we consider whether K.S.A. 22-3203 permitted joinder. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) spells out the three conditions permitting the joining of multiple crimes in a single complaint. Whether one of the conditions is satisfied is a fact-specific inquiry, and we review the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo.'

> "'Second, because K.S.A. 22-3202(1) provides that charges "may" be joined, a district court retains discretion to deny a joinder request even if a statutory condition is met. We review this decision for an abuse of discretion.'

> "'Finally, if an error occurred in the preceding steps, we determine whether the error resulted in prejudice, *i.e.*, whether the error affected a party's substantial rights. K.S.A. 2012 Supp. 60-261.' [Citations omitted.]" *State v. Ritz*, 305 Kan. 956, 961, 389 P.3d 969 (2017).

We first engage in a fact-specific inquiry to determine if the two separate crimes were properly joined in a single complaint. K.S.A. 22-3202(1) allows two or more crimes to be charged in the same complaint if: (1) the charges are of "the same or similar

character"; (2) the charges are part of the "same act or transaction"; or (3) the charges result from "two or more acts or transactions connected together or constituting parts of a common scheme or plan." The district court found that the two alleged crimes were properly joined because they were of the same or similar character. In so concluding, the district court identified no less than 11 similarities between the alleged crimes.

The district court noted that the victims were both female and of similar age; the crimes occurred in the same area of Manhattan around the same time of night; the crimes occurred within two days of each other; Toliver was identified by both victims as the perpetrator; and the crimes were reported to the same police officer. Both crimes were investigated as part of a single criminal investigation, carried the same gravity—both class A misdemeanors, required trial by jury, and shared the same potential for incarceration.

Toliver argues that the similarities identified by the district court are mere generalities, insufficient to warrant joinder under the statute. See *State v. Barksdale*, 266 Kan. 498, 508, 973 P.2d 165 (1999) (warning against "relying solely on generalities when considering the propriety of joinder"). However, such similarities have routinely been upheld as sufficient to permit joinder under K.S.A. 22-3202, particularly when the alleged crimes have "multiple commonalities" and do not merely share the same classification of one of the crimes charged. *State v. Smith-Parker*, 301 Kan. 132, 157, 340 P.3d 485 (2014). See, e.g., *Ritz*, 305 Kan. at 963-64 (finding two sets of crimes involving fleeing law enforcement to be same or similar, despite factual differences in underlying theft charges and addition of felony-murder charge in only one case, when there were numerous factual similarities in how crimes were perpetrated, both sets of crimes required trial by jury, and carried incarceration as punishment); *State v. Cruz*, 297 Kan. 1048, 1050-53, 1055-56, 307 P.3d 199 (2013) (finding two murder charges to be same or similar, despite crimes being committed 17 months apart, when, among other things, crimes were committed at same time of night and in similar locations; defendant was

5

identified as perpetrator in both incidents; and same witnesses would be called at trial); *State v. Gihring*, No. 118,234, 2019 WL 1868364, at *7 (Kan. App. 2019) (unpublished opinion) (finding two rape crimes to be same or similar when, among other things, victims were approximately same age and both identified defendant as perpetrator; and crimes were of same severity level, occurred in same jurisdiction, were scheduled for jury trial, and carried same punishment—incarceration).

As those cases demonstrate, "[w]hen all of the offenses are of the same general character, require the same mode of trial and the same kind of evidence, and occur in the same jurisdiction," the separate charges may be properly consolidated under K.S.A. 22-3202(1). *State v. Crawford*, 255 Kan. 47, 53, 872 P.2d 293 (1994); see also *Barksdale*, 266 Kan. at 507 (noting similarity of punishments is another factor to consider when considering crimes to be "of the same or similar character"). This is not an exacting standard. Instead, our courts have noted that it is rare for appellate courts to overturn convictions after a trial court denied severance and have even gone so far as holding that "joinder of similar crimes is the rule and severance is the exception." *State v. Bunyard*, 281 Kan. 392, 402, 133 P.3d 14 (2006), *disapproved of on other grounds by State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014).

We note Toliver does not dispute that the district court's factual findings were supported by the record, and, after reviewing the record, we find there is substantial competent evidence supporting those factual findings. We agree with the district court's legal conclusion that the two crimes were of a same or similar character and therefore properly joined under K.S.A. 22-3202(1).

The second step of our analysis requires us to determine whether the district court abused its discretion. On appeal from the denial of a motion to sever, the party claiming error has the burden to establish a clear abuse of discretion. See *Smith-Parker*, 301 Kan. at 161. In this regard, Toliver does not argue that the district court abused its discretion,

and we see no basis for such an argument. To the contrary, we note that the district court's ruling was thorough and well-supported, demonstrating a careful exercise of discretion. Accordingly, we conclude that the district court did not abuse its discretion in denying the motion to sever.

Finally, if an error occurred in the preceding steps, the third step of analysis requires that we consider whether the error resulted in prejudice. *Ritz*, 305 Kan. at 961; see K.S.A. 2019 Supp. 60-261. Having found no error in the district court's denial of severance of the charges, we need not proceed further. Nevertheless, we can additionally conclude, with conviction, no prejudice actually occurred as a result of joinder of the charges.

In particular, we note that Toliver's primary contention—the jury would be confused and unable to separately consider the charges as a result of joinder—was not born out at trial. For one, the jury was properly instructed to consider each charge "separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." Our courts have routinely held that such an instruction negates any jury confusion or prejudicial effect of trying a person on multiple counts. See, e.g., *Cruz*, 297 Kan. at 1057-58; *State v. Gaither*, 283 Kan. 671, 687, 156 P.3d 602 (2007); *Gihring*, 2019 WL 1868364, at *11.

Further, Toliver has not demonstrated any actual prejudice from the district court's decision not to sever the charges, as demonstrated by the jury acquitting Toliver of the sexual battery charge. Our courts have consistently held that such verdicts establish that the jury was able to differentiate the evidence and not jumble the charges. See *Cruz*, 297 Kan. at 1058 ("Sometimes, we view acquittals as compelling evidence of a jury's ability to differentiate between charges joined for trial."); *Bunyard*, 281 Kan. at 401-02 (finding defendant's argument regarding "'jumbling defenses'" to be "inscrutable" when jury acquitted defendant of two of three counts); *Gihring*, 2019 WL 1868364, at *11

7

("Multiple cases have held that a split verdict is compelling evidence that the jury was able to differentiate the evidence and not jumble the charges."); see also *State v. Thomas*, No. 119,240, 2019 WL 3977820, at \*5-6 (Kan. App. 2019) (unpublished opinion) (finding similar jury instruction to have been "effective" when defendant was acquitted of some charges).

Finally, Toliver's related argument—the failure to sever resulted in the prejudicial admission of other-crimes evidence under K.S.A. 60-455—has also been routinely rejected by our courts. See *Smith-Parker*, 301 Kan. at 161; *Gaither*, 283 Kan. at 688; *Barksdale*, 266 Kan. at 510; *Gihring*, 2019 WL 1868364, at \*11-12. Instead, "'Kansas case law and the provisions of K.S.A. 22-3202(1) make it clear that joinder is not dependent upon the other crimes being joined meeting the admissibility test set forth in K.S.A. 60-455.'" *Smith-Parker*, 301 Kan. at 161; *Gaither*, 283 Kan. at 688; *Barksdale*, 266 Kan. at 510.

In sum, based on the uncontested, substantial competent evidence, a reasonable person could agree with the trial court that the two crimes were of the same or similar character. Further, Toliver has failed to demonstrate that he was prejudiced as a result of the district court's decision not to sever the charges. Accordingly, we conclude that the district court did not err by denying severance of the sexual battery and stalking charges against Toliver.

II.     DID THE DISTRICT COURT ERR BY ADMITTING STATEMENTS MADE BY K.M. AND S.H. TO THE POLICE OFFICER INVESTIGATING THE ALLEGED CRIMES?

Toliver contends that several statements made by K.M. and S.H. to Officer Daniel Todd, the officer investigating the alleged crimes, were improperly admitted, arguing the statements were speculative and their admission resulted in unduly prejudicial attacks on Toliver's character. A trial court's decision to admit or exclude evidence is assessed using

several standards of review. *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015); *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

As a general rule, all relevant evidence is admissible under K.S.A. 60-407(f). Relevant evidence is defined as evidence having "any tendency in reason to prove any material fact." K.S.A. 60-401(b). To be relevant, evidence must be both material and probative. *Page*, 303 Kan. at 550-51. Evidence is material when the fact it supports "'is at issue and is significant under the substantive law of the case.'" *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). Moreover, evidence is probative if it has any tendency to prove any material fact. See *State v. Dean*, 310 Kan. 848, 862, 450 P.3d 819 (2019). Our standard of review regarding whether evidence is material is de novo. On the other hand, we review whether evidence is probative under an abuse of discretion standard. *McCormick*, 305 Kan. at 47.

Even if evidence is otherwise admissible, a district court may—in its discretion—exclude such evidence under K.S.A. 60-445 when the evidence's probative value outweighs its potential for producing undue prejudice. *Lowrance*, 298 Kan. at 291. The appellate standard of review for balancing these competing interests is also abuse of discretion, with the burden of proof resting on the party alleging such abuse. 298 Kan. at 291. In this regard, "Kansas law favors the admission of otherwise relevant evidence, and the exclusion of relevant evidence is an extraordinary remedy that should be used sparingly." *State v. Seacat*, 303 Kan. 622, 640, 366 P.3d 208 (2016).

Because Toliver pleaded not guilty to the stalking and sexual battery charges, every material fact alleged in the charges was at issue. See K.S.A. 22-3209(3); *State v. Donesay*, 265 Kan. 60, 75, 959 P.2d 862 (1998). Thus, the evidence regarding Toliver's identification as the perpetrator, Toliver's intent, and K.M. and S.H.'s state of mind was material and probative.

9

Toliver filed a motion in limine challenging the admission of statements made by K.M. and S.H. captured on body camera worn by the investigating officer during the initial investigation. There are nine statements or comments which are challenged in summary fashion as being "speculation, improper character evidence regarding the Defendant and or improper prior acts" and as lacking foundation, probative value, and relevance. Other than a citation to caselaw discussing and defining "relevant" evidence, Toliver fails to cite any authority, rule of evidence, or caselaw in support of his position. He does not analyze or explain how each individual challenged statement violates any statute, rule of evidence, or caselaw authority. For example, Toliver challenges many of the statements as "improper character evidence" without citing any authority or explaining how the statements were "improper" or how he was unduly prejudiced by their admission. We therefore find he has waived those challenges. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ("When a litigant fails to adequately brief an issue it is deemed abandoned."). Nonetheless, because Toliver has properly challenged relevance, we address most of the challenged statements below.

Toliver challenges K.M.'s statement, "I think [Toliver] might have figured out my schedule." The statement is probative to the stalking charge as it demonstrates that K.M. believed Toliver was following her and she was afraid of Toliver. We find no abuse of discretion by the district court in admitting the statement.

Toliver next challenges K.M.'s statement, "He hangs around bars" as speculative. However, as the district court noted, this statement is based on K.M.'s own observations and is therefore not speculation. K.M. worked at a bar in Manhattan and had multiple prior experiences with Toliver. And Toliver had the opportunity to cross-examine K.M.'s testimony at trial. Accordingly, we find no abuse of discretion to admit this statement at trial.

10

In the course of describing the events on the evening of the sexual battery, S.H. made the unexpected decision to get into her friend's car out of fear for her safety, a fact supported by other uncontested evidence. In her statements to the officer, S.H. stated, "My friend looked at me cause he was like, you were going to go to your car." Although the statement is of minimal evidentiary value when viewed in isolation, we conclude that S.H.'s statement was probative as it explained and provided credibility regarding her fear of Toliver and her actions immediately following the alleged sexual battery. Toliver was acquitted of the sexual battery, and he does not explain how the admission of this statement is unduly prejudicial. Accordingly, we find no abuse of discretion in the admission of the statement.

Finally, Toliver challenges a number of statements labelling him as a "predator." On the recording, K.M. said, "Apparently this guy's a total predator [cross-talk] and he's acting like a predator"; and "There's tons of creepy dudes that are super creepy, but, you know, not follow you home creepy and knock on your door creepy. Like it's more than just a coincidence to me." Toliver also objected to K.M.'s and S.H.'s characterizations of Toliver as having a "very noticeable predator vibe," and K.M.'s statements that "women get instincts," "[e]veryone in the world is creeped out by this dude," and "[p]eople were choosing not to be close" to Toliver.

Toliver argues these statements are not probative, are speculative, and are improper character attacks. As noted above, Toliver did not provide any authority or argument setting forth a legal theory on how or why the statements were improper character attacks, so we decline to address this aspect of his objection. See *Sprague*, 303 Kan. at 425. These statements are probative in explaining the basis for K.M.'s and S.H.'s fear of Toliver and, therefore, are relevant. We conclude the district court did not abuse its discretion by allowing the admission of the challenged statements at trial.

11

III. WAS TOLIVER PREJUDICED BY THE STATE'S DECISION NOT TO CALL TOLIVER'S PRIOR VICTIMS TO TESTIFY AGAINST HIM?

Prior to trial, the State sought, and was granted, the ability to call three witnesses to testify regarding Toliver's prior conviction for residential burglary with the intent to commit a sexual battery. In opposing the admission of his prior burglary offenses before the district court, Toliver argued:

"The State seeks to introduce the information from the 2009 offenses merely to inflame the jury, to prejudice the Defendant as to the current allegations. The only thing that will result is prejudicial effect absent similarity in the facts which do not exist.
. . . .
". . . *Presentation of the evidence regarding the 2009 matters is nothing but prejudicial*." (Emphasis added.)

The district court ruled it would permit admission of testimony from the prior victims, the officer who investigated the prior crime, and a journal entry of the prior conviction. At trial, however, the State ultimately decided not to present any of that evidence. Toliver contends the State's decision resulted in an unfair trial and the State's failure to disclose its decision not to use that evidence before trial amounted to nondisclosure of exculpatory evidence. Toliver fails to adequately explain how evidence which he described as "nothing but prejudicial" at the trial court level was transformed into "exculpatory" evidence on appeal. In support of his contention Toliver points to *State v. Kelly*, 216 Kan. 31, 33, 531 P.2d 60 (1975), which provides:

"Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. To justify a reversal of a conviction for failure to disclose evidence, the evidence withheld held by the prosecution must be clearly and unquestionably exculpatory and the withholding of the evidence must be clearly prejudicial to the defendant."

Toliver complains that he was prejudiced by the State's decision not to call the witnesses to testify because his attorney had prepared anticipating the testimony of those witnesses. He also contends it affected his decision whether to testify. However, Toliver does not explain how or why his attorney would have prepared differently had the State informed him, in advance, that it would not call Toliver's prior victims to testify. Further, at trial, following disclosure by the State of its decision not to call Toliver's prior victims, the district court offered Toliver yet another opportunity to testify on his own behalf, which he declined. As such, we fail to see how the State's decision not to call the victim witnesses affected Toliver's presentation of evidence in his defense. We find no merit in Toliver's argument and no basis to conclude that the State suppressed exculpatory evidence.

IV.     DID CUMULATIVE ERROR RESULT IN AN UNFAIR TRIAL?

Based on our review of the record, we find no errors by the district court. Thus, Toliver's cumulative error argument fails. See *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). Therefore, we affirm his conviction and sentence.

Affirmed.